[No. D047993. Fourth Dist., Div. One. Apr. 9, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
MEGAN ELIZABETH WEAVER, Defendant and Appellant.

1304

**COUNSEL**

Patrick Morgan Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Mary Jo Graves, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Jeffrey J. Koch and James D. Dutton, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**McDONALD, J.**—Megan Elizabeth Weaver appeals a judgment entered following her guilty plea to one count of gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a))[1] and her admission of the truth of an allegation she personally inflicted great bodily injury on another person in the commission of that offense (§ 12022.7, subd. (a)). On appeal, Weaver contends the trial court erred by (1) denying her request for probation; (2) imposing the middle six-year term for her section 191.5, subdivision (a) offense; and (3) imposing a consecutive three-year enhancement under section 12022.7, subdivision (a). She also contends: (1) her conviction of only one offense precludes a court from considering it as two prior serious felony convictions within the meaning of section 1192.7, subdivision (c)(8) and the three strikes law (§ 667, subds. (b)–(i)); and (2) the victim restitution fine imposed by the trial court must be offset by the amount paid by her insurance company.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

On August 19, 2004, Weaver graduated from San Diego State University. Celebrating her graduation with friends (including Jaylin Ruiz), Weaver consumed several shots of alcohol (Jägermeister).

About 1:00 a.m. on August 20, Ed Thurston, driving his car eastbound on Highway 56 about two to four miles from its intersection with Interstate 5, saw a car approaching him from the opposite direction on the wrong side of the divided highway. The car did not have its headlights on and was traveling in the fast lane at a speed of over 70 miles per hour. After it passed him, Thurston saw that the car also did not have its rear taillights on.

Also about 1:00 a.m., Jose Garcia, driving his car eastbound on Highway 56 about one-half mile from its intersection with Interstate 5, saw a car approaching him from the opposite direction on the wrong side of the divided highway. The car had its headlights on and was traveling in the fast lane at a speed of 80 to 90 miles per hour. Garcia swerved to the right to avoid colliding with the car and then swerved left, lost control of his car, and drove into bushes and rocks in the highway's median. The other car did not stop or slow down and merged onto the northbound lanes of Interstate 5 heading south (i.e., the opposite direction of oncoming traffic).

---

[1] All statutory references are to the Penal Code unless otherwise specified.

[2] Because Weaver pleaded guilty before trial, the factual summary is based on the preliminary hearing transcript and probation report filed in this case.

Also about 1:00 a.m., Scott Tempus, driving his car eastbound on Highway 56 about one-quarter mile from its intersection with Interstate 5, saw a car approaching him from the opposite direction on the wrong side of the divided highway.[3] The car had its headlights on and was traveling in the slow lane. After Tempus swerved to avoid the car, the other car merged onto the northbound lanes of Interstate 5 heading south (i.e., the opposite direction of oncoming traffic).

Also about 1:00 a.m., Anatoly Sigalov (Sigalov) was driving his car northbound on Interstate 5 just south of the on-ramp or transition to eastbound Highway 56. His wife Mara was sitting in the front passenger seat. Sigalov was traveling about 65 miles per hour, with his car's headlights on, when he saw the reflection of his headlights on the front windshield of an oncoming car, which was only about a "yard away." The other car did not have its headlights on. Weaver was the other car's driver. Without time for Sigalov to react, the two cars collided head-on.[4]

Both cars sustained substantial damage. Mara died from blunt force trauma suffered in the collision. Sigalov suffered cracked ribs and a dislocated right hip, requiring surgery to repair his pelvis.

While being transported in an ambulance, Weaver told an emergency medical technician that she had been drinking. He smelled alcohol on her breath. At 3:45 a.m., blood was drawn from Weaver. Testing of that blood sample showed Weaver's blood-alcohol content (BAC) was 0.151 percent. Her blood sample also tested positive for the presence of cocaine, suggesting she had consumed cocaine about two to three hours before the blood was drawn.[5]

On December 10, an information was filed, charging Weaver with five counts: (1) gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)); (2) driving under the influence, causing injury (Veh. Code, § 23153,

---

[3] Tempus's roommate, John Davis, and Tempus's daughter were passengers in his car.

[4] Based on the damage to his car, Sigalov, as an owner of an automobile body shop, estimated Weaver's car was traveling at a speed of over 100 miles per hour.

[5] At the preliminary hearing, a prosecution expert testified that for about 15 to 20 minutes after consuming cocaine, Weaver would have felt its euphoric effects, including a sense of confidence, but would be sensitive to bright lights. Thereafter, Weaver would "crash," feel paranoid, and have blurred vision. Furthermore, her sensitivity to bright lights would become greater. Cocaine, combined with alcohol, decreases a person's reaction time and increases paranoia, depression, and blurred vision.

subd. (a)); (3) driving with a BAC of 0.08 percent or greater and causing injury (Veh. Code, § 23153, subd. (b)); (4) driving the wrong way on a divided highway and causing injury (Veh. Code, § 21651, subds. (b) & (c)); and (5) hit-and-run driving (Veh. Code, § 20002, subd. (a)). The information also alleged that: (1) in committing counts 1 through 3, Weaver caused bodily injury or death (Veh. Code, § 23558); (2) in committing count 1, she personally inflicted great bodily injury on Sigalov (§ 12022.7, subd. (a)); (3) in committing counts 2 through 4, she personally inflicted great bodily injury on Mara and Sigalov (§ 12022.7, subd. (a)); and (4) regarding counts 1 through 4, her offenses constituted serious felonies within the meaning of section 1192.7, subd. (c)(8) because she inflicted great bodily injury on Mara and Sigalov.

On September 28, 2005, the date scheduled for trial, Weaver pleaded guilty to count 1 (§ 191.5, subd. (a)) and admitted the truth of the allegations related to count 1, including that in committing the section 191.5, subdivision (a) offense she personally inflicted great bodily injury on Sigalov within the meaning of section 12022.7, subdivision (a) and on Sigalov and Mara within the meaning of section 1192.7, subdivision (c)(8). Pursuant to her plea agreement with the prosecution, the trial court dismissed the remaining charges and allegations.

On December 14, the trial court denied probation and sentenced Weaver to the middle term of six years for count 1 and a consecutive three-year term for the section 12022.7, subdivision (a) enhancement, for a total term of nine years.[6] Pursuant to section 654, the trial court stayed imposition of the one-year enhancement under Vehicle Code section 23558. The court also imposed a restitution fine of $229,479, "subject to modification upward or downward on the application by counsel and a hearing can be held." It expressly retained jurisdiction to address the issue of restitution and to amend the judgment.

On February 6, 2006, Weaver filed a notice of appeal.

On March 20, Weaver filed a motion to recall her sentence pursuant to section 1170, subdivision (d), requesting that the trial court recall its sentence, impose the lower four-year term for count 1, and strike the enhancement for her infliction of great bodily injury.[7] Attached to her motion were declarations

---

[6] The probation report filed prior to Weaver's sentencing noted that during an interview she stated she could not remember much about the night of the incident. She remembered graduating from college and celebrating with friends in Del Mar by drinking several shots of Jägermeister and thereafter only remembered waking up in the hospital.

[7] On May 3, 2006, we granted Weaver's unopposed request to augment the appellate record with copies of her motion to recall and the trial court's minute order denying that motion.

of her former boyfriend (Jacob Ramsey) and Danielle Steinke, who was at the party, explaining some of the events preceding the incident and why Weaver drove her car that night while intoxicated. Based on those declarations, her motion argued in part that she intended to stay overnight at her friend Ruiz's house and had not planned to drive her car that night, but did so only after her then boyfriend (Ramsey) called and asked her to come home to Spring Valley.

On March 21, the trial court denied Weaver's motion.[8]

## DISCUSSION

### I

### *Denial of Probation*

Weaver contends the trial court abused its discretion by denying her request that she be granted probation. She argues the trial court considered improper factors and did not consider relevant factors.

### A

At Weaver's sentencing, the trial court received and considered the probation report, the prosecution's statement in aggravation, Weaver's statement in mitigation, and letters from, and testimonies of, family and friends of both Mara and Weaver.[9] The probation report recommended probation be denied and the court impose the middle term of six years for count 1 and a consecutive three-year term for the section 12022.7, subdivision (a) enhancement. The prosecution's statement in aggravation requested probation be denied and the court impose the upper term of 10 years for count 1 and a consecutive three-year term for the section 12022.7, subdivision (a) enhancement. Weaver's statement in mitigation requested probation be granted.

After hearing arguments of counsel, the trial court found Weaver was genuinely remorseful and was not a chronic partygoer in college. It also noted the "dreadful" injuries suffered by Sigalov. The court stated that in sentencing Weaver, its job was to apply the law to this case while considering "the

---

[8] Weaver's appeal does not challenge the trial court's denial of her motion to recall her sentence.

[9] In previously finding an evidentiary basis to support Weaver's guilty plea, the trial court considered the preliminary hearing transcript.

framework of protecting society, meting out an appropriate punishment deterring others, hopefully preventing other crimes and achieving some degree of uniformity in sentencing." The court noted that California Rules of Court, rule 4.414[10] guided its consideration of whether to grant or deny probation. The court stated:

"There are factors that weigh on both sides [i.e., granting or denying probation]. Certainly in favor of grant of probation is this young woman's youth, her lack of significant record, just one speeding ticket and her absence of actual malice in this case[, h]er genuine remorse and her ability to comply with the conditions of probation if probation were granted.

"On the other side of the [equation] lies the horrific nature of this offense. The dreadful loss to this family, the fact that Ms. Weaver . . . did not stop her driving after the first near miss, the high blood alcohol, the presence of drugs. I find the drug was cocaine. . . .

"Mr. Sigalov, I think, unknowingly touched on another factor that I think was important and that is the vulnerability of him and his wife. They're driving on a highway in a lane that they're lawfully allowed to drive on at a speed they're lawfully allowed to drive. And one does not expect this to happen under those circumstances."

Considering those factors, the trial court denied probation as "not appropriate."

## B

█ "All defendants are eligible for probation, in the discretion of the sentencing court [citation], unless a statute provides otherwise." (*People v. Aubrey* (1998) 65 Cal.App.4th 279, 282 [76 Cal.Rptr.2d 378].) "The grant or denial of probation is within the trial court's discretion and the defendant bears a heavy burden when attempting to show an abuse of that discretion. [Citation.]" (*Ibid.*) "In reviewing [a trial court's determination whether to grant or deny probation,] it is not our function to substitute our judgment for that of the trial court. Our function is to determine whether the trial court's order granting [or denying] probation is arbitrary or capricious or exceeds the bounds of reason considering all the facts and circumstances." (*People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 825 [7 Cal.Rptr.2d 177].)

---

[10] All rule references are to the California Rules of Court.

"The decision to grant or deny probation requires consideration of all the facts and circumstances of the case. [Citation.]" (*People v. Birmingham* (1990) 217 Cal.App.3d 180, 185 [265 Cal.Rptr. 780].)

Rule 4.410 provides:

**"(a) General objectives of sentencing include:**

"(1) Protecting society;

"(2) Punishing the defendant;

"(3) Encouraging the defendant to lead a law-abiding life in the future and deterring him or her from future offenses;

"(4) Deterring others from criminal conduct by demonstrating its consequences;

"(5) Preventing the defendant from committing new crimes by isolating him or her for the period of incarceration;

"(6) Securing restitution for the victims of crime; and

"(7) Achieving uniformity in sentencing.

"(b) Because in some instances these objectives may suggest inconsistent dispositions, the sentencing judge must consider which objectives are of primary importance in the particular case. The sentencing judge should be guided by statutory statements of policy, the criteria in these rules, and the facts and circumstances of the case."

Regarding a trial court's decision whether to grant or deny probation, rule 4.414 provides:

"Criteria affecting the decision to grant or deny probation include facts relating to the crime and facts relating to the defendant.

**"(a) Facts relating to the crime**

"Facts relating to the crime include:

"(1) The nature, seriousness, and circumstances of the crime as compared to other instances of the same crime; [¶] . . . [¶]

"(3) The vulnerability of the victim;

"(4) Whether the defendant inflicted physical or emotional injury;

"(5) The degree of monetary loss to the victim;

"(6) Whether the defendant was an active or a passive participant;

"(7) Whether the crime was committed because of an unusual circumstance, such as great provocation, which is unlikely to recur; [¶] . . . [¶]

"**(b) Facts relating to the defendant**

"Facts relating to the defendant include:

"(1) Prior record of criminal conduct . . . ; [¶] . . . [¶]

"(3) Willingness to comply with the terms of probation;

"(4) Ability to comply with reasonable terms of probation as indicated by the defendant's age, education, health, mental faculties, history of alcohol or other substance abuse, family background and ties, employment and military service history, and other relevant factors;

"(5) The likely effect of imprisonment on the defendant and his or her dependents;

"(6) The adverse collateral consequences on the defendant's life resulting from the felony conviction;

"(7) Whether the defendant is remorseful; and

"(8) The likelihood that if not imprisoned the defendant will be a danger to others."

In deciding whether to grant or deny probation, a trial court may also consider additional criteria not listed in the rules provided those criteria are reasonably related to that decision. (Rule 4.408(a).) A trial court is generally required to state its reasons for denying probation and imposing a prison sentence, including any additional reasons considered pursuant to rule 4.408. (Rules 4.406(b)(2) & 4.408(a).) Unless the record affirmatively shows otherwise, a trial court is deemed to have considered all relevant criteria in deciding whether to grant or deny probation or in making any other discretionary sentencing choice. (Rule 4.409.)

"The circumstances utilized by the trial court to support its sentencing choice need only be established by a preponderance of the evidence. [Citations.]" (*People v. Leung* (1992) 5 Cal.App.4th 482, 506 [7 Cal.Rptr.2d 290].) Accordingly, in determining whether a trial court abused its discretion by denying probation, we consider, in part, whether there is sufficient, or substantial, evidence to support the court's finding that a particular factor was applicable. (*Id.* at pp. 506–507.)

## C

 Weaver argues the trial court considered improper factors in deciding whether to grant or deny probation.[11] She asserts the trial court improperly considered "victim vulnerability." However, rule 4.414(a)(3) expressly lists "[t]he vulnerability of the victim" as a relevant fact relating to the crime that should be considered by a trial court in deciding whether to grant or deny probation. In this case, although the probation report did not list that factor, the prosecution's statement in aggravation *did* list the "vulnerability of the victim" as a reason supporting denial of probation, stating: "Both Anatoly and Mara Sigalov were vulnerable victims, in the sense that they never had a chance to defend themselves against the defendant. The [Sigalovs] were driving on a highway in the darkness of the night. They were driving legally, and safely. They were driving the speed limit, with the headlights of their car on. The defendant was driving towards them at approximately 70 miles per hour, heading in the wrong direction, with her headlights off. The [Sigalovs] were completely vulnerable to the defendant's actions." The trial court expressly relied on the vulnerability of the victims as a factor in deciding to deny probation, stating: "[A]nother factor that I think was important . . . is the vulnerability of [Sigalov] and his wife. They're driving on a highway in a lane that they're lawfully allowed to drive on at a speed they're lawfully allowed to drive. And one does not expect this to happen under those circumstances." Victim "[v]ulnerability means defenseless, unguarded, unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act." (*People v. Smith* (1979) 94 Cal.App.3d 433, 436 [156 Cal.Rptr. 502] [describing that term in the context of rule 4.421(a)(3)].)[12] Based on our review of the record, we conclude there is sufficient evidence to support the trial court's finding that Sigalov and Mara were vulnerable victims of Weaver's crime within the meaning of rule 4.414(a)(3). Weaver's car was traveling in the opposite direction of oncoming traffic on northbound Interstate 5 at a high rate of speed.[13] Despite the late-night darkness, its headlights were off. In contrast, the Sigalovs' car was traveling in the proper direction at a normal rate of speed and had its headlights on. Based on those circumstances, the trial court could reasonably conclude Sigalov and Mara were *vulnerable* within the meaning of rule 4.414(a)(3) because they had absolutely no advance warning or ability to avoid Weaver's oncoming car.

---

[11] For purposes of this opinion, we assume, without deciding, that Weaver did not forfeit or waive this contention by not timely objecting to the trial court's consideration of all or some of the purported improper factors.

[12] We presume that *Smith*'s description of victim "vulnerability" also applies in the instant rule 4.414(a)(3) context.

[13] Sigalov estimated Weaver's car was traveling at a speed of over 100 miles per hour. Based on the testimonies of other percipient witnesses, her car was traveling at least 70 miles per hour.

Although Weaver argues Sigalov and Mara were not "particularly" vulnerable victims, that finding is not required under rule 4.414(a)(3) and, in any event, the record supports a finding they were, in fact, particularly vulnerable victims. Citing *People v. Bloom* (1983) 142 Cal.App.3d 310 [190 Cal.Rptr. 857] and *People v. Piceno* (1987) 195 Cal.App.3d 1353 [241 Cal.Rptr. 391], Weaver asserts that because all victims òf gross vehicular manslaughter are vulnerable, no victim of gross vehicular manslaughter can be "particularly" vulnerable. However, in so arguing, Weaver relies solely on cases involving only rule 4.421(a)(3), which provides that one circumstance in aggravation for purposes of deciding whether to impose an upper, middle, or lower term is whether "[t]he victim was *particularly* vulnerable." (Italics added.) That circumstance (and its "particularly" requirement) is inapplicable here because rule 4.421 does not address circumstances to be considered in granting or denying probation. Furthermore, rule 4.414(a)(3) does *not* include the qualifying term "particularly" in listing the "vulnerability" of a victim as a circumstance to be considered in granting or denying probation. Therefore, we conclude that neither rule 4.421(a)(3)'s requirement that a victim be "particularly" vulnerable nor the interpretations of that term in *Bloom* and *Piceno* apply to the trial court's denial of probation in this case.[14] To the extent the court in *People v. McNiece* (1986) 181 Cal.App.3d 1048 [226 Cal.Rptr. 733], disapproved on another ground in *People v. McFarland* (1989) 47 Cal.3d 798, 804–805 [254 Cal.Rptr. 331, 765 P.2d 493], concluded otherwise, we disagree with its reasoning and therefore decline to apply its

---

[14] Interpreting the term "particularly vulnerable" for purposes of rule 4.421(a)(3), *Bloom* stated: "There are few individuals as 'defenseless, unguarded, unprotected, accessible, assailable and susceptible' as those who have the misfortune of being in the wrong place at the wrong time when a drunk driver takes to the road. All victims of drunk drivers are 'vulnerable victims,' but it is precisely because they are *all* vulnerable that Carrie Lee cannot be considered to be vulnerable 'in a special or unusual degree, to an extent greater than in other cases.' [Citation.] While we can visualize extraordinary situations in which a drunk driving victim might be considered to be 'particularly vulnerable,' such a situation is not present here, and therefore the court erred in applying rule 421(a)(3) to this case." (*People v. Bloom, supra*, 142 Cal.App.3d at p. 322.) Unlike our case, in *Bloom* the defendant was driving his car about 50 miles per hour while other cars were traveling about 35 miles per hour and his car was, immediately before the head-on accident, traveling in the proper lane of an (apparently) undivided street. (*Id.* at p. 314.) Furthermore, testimony showed the victim in *Bloom* had sufficient time to, and did, attempt to avoid the head-on collision, with her car leaving 20 feet of skid marks on the road. (*Ibid.*) Interpreting the term "particularly vulnerable" for purposes of rule 4.421(a)(3), in *Piceno* we stated: "No one could possibly deny the [pedestrian] victim here was vulnerable. But, regrettably all victims of vehicular manslaughter—be they pedestrians, fellow drivers or passengers—were vulnerable. They unfortunately were in the wrong place at the wrong time." (*People v. Piceno, supra*, 195 Cal.App.3d at p. 1358.) In our case, the trial court could reasonably conclude that Sigalov and Mara were not just "in the wrong place at the wrong time," but rather were particularly vulnerable because of the late-night darkness and Weaver's failure to have her car's headlights on, thereby giving the Sigalovs absolutely no advance warning of, or ability to attempt to avoid, the collision. Therefore, *Bloom* and *Piceno* do not persuade us to conclude otherwise.

holding in the circumstances of this case.[15] In any event, assuming arguendo that requirement applied, we nevertheless would conclude there is substantial evidence to support a finding that Sigalov and Mara, in the circumstances of this case, were, in fact, particularly vulnerable victims of Weaver's offense. There is no empirical evidence in the appellate record showing that the "usual" victim of gross vehicular manslaughter has absolutely no advance warning or ability to attempt to avoid the defendant's car. On the contrary, one can envision many situations involving gross vehicular manslaughter (whether a § 191.5, subd. (a) offense or otherwise) in which the victim has at least some advance notice or warning of the imminent risk posed by the defendant's car, thereby allowing him or her at least some opportunity to attempt to avoid the collision. Those victims presumably should be considered less vulnerable than Sigalov and Mara in this case. Weaver's car was traveling in the opposite direction of oncoming traffic on northbound Interstate 5 at a high rate of speed. Despite the late-night darkness, its headlights were off. In contrast, the Sigalovs' car was traveling in the proper direction at a normal rate of speed and had its headlights on. Based on those circumstances, the trial court could have reasonably concluded Sigalov and Mara were *particularly* vulnerable because they, apparently unlike "usual" victims of gross vehicular manslaughter, had absolutely no advance warning or ability to attempt to avoid the oncoming car.

 Weaver also argues the trial court erred by improperly considering the "horrific nature of this offense," which included the "dreadful loss" to the

---

[15] In what apparently is dicta because the court reversed the defendant's gross vehicular manslaughter conviction on which the challenged sentence was based, *McNiece* stated the trial court erred by denying probation based on the victim's vulnerability. (*People v. McNiece, supra,* 181 Cal.App.3d at pp. 1053, 1058–1059.) In so doing, *McNiece* relied on *Bloom* and its requirement that a victim be "particularly" vulnerable for that factor to be considered aggravating and supportive of sentencing a defendant to an upper term. (*McNiece,* at pp. 1058–1059.) However, rule 4.414(a)(3) does *not* include a requirement that a victim be "particularly" vulnerable for that factor to be considered in granting or denying probation. Because we believe *McNiece* erred by relying on *Bloom* and rule 4.421(a)(3)'s language for aggravating circumstances for imposing an upper term, rather than the express language of rule 4.414(a)(3) for circumstances to be considered in granting or denying probation, we disagree with its reasoning and conclusion and therefore decline to apply it to the circumstances in this case. In so doing, we note there is a substantial difference between merely selecting an upper, middle, or lower term (as in *Bloom*) and deciding to effectively excuse a defendant from serving any prison term by granting probation. Therefore, the omission in rule 4.414(a)(3) of any requirement that a victim be "particularly" vulnerable effectively (and, in our opinion, appropriately) makes a victim's vulnerability more frequently applicable in a trial court's weighing whether to grant or deny probation than when a trial court, having denied probation, considers whether to impose a lower, middle, or upper term. Accordingly, the practical effect of that difference appears to be that a trial court, in any given case, may be somewhat more inclined to deny probation if it applies rule 4.414(a)(3) as we interpret it than if it applies the rule 4.421(a)(3) standard (per *Bloom & McNiece*) in deciding whether to grant or deny probation.

victim's family, Weaver's continuation of driving after the "near miss" prior to the collision, her high BAC, and the presence of cocaine in her system. However, rule 4.414(a)(1) expressly provides that a trial court should consider "[t]he nature, seriousness, and circumstances of the crime as compared to other instances of the same crime." Also, rule 4.414 provides that the trial court should consider "[w]hether the defendant inflicted physical or emotional injury" (rule 4.414(a)(4)) and "[t]he degree of monetary loss to the victim" (rule 4.414(a)(5)). Therefore, the trial court properly considered the "horrific nature," or the nature, seriousness, and circumstances, of Weaver's offense when compared to other section 191.5, subdivision (a) offenses, as well as the physical and emotional injuries and monetary loss Weaver inflicted on the victims of her offense. The trial court implicitly concluded, and we cannot presume otherwise, that "other instances" of section 191.5, subdivision (a) offenses do not involve the same egregious circumstances as in this case. (Rule 4.414(a)(1).) Furthermore, the trial court properly considered the "dreadful loss" to the victim's family because rule 4.414 does *not* require the physical and emotional injuries or economic losses of the victim and/or the victim's family be particularly great or unusual in comparison to other instances of section 191.5, subdivision (a) offenses. (Rule 4.414(a)(4), (5).) Rather, the physical and/or emotional injuries and the monetary losses inflicted on the victim and/or the victim's family should be considered by a trial court in *all* cases in deciding whether to grant or deny probation. (*Ibid.*)

## D

Weaver also contends the trial court erred by not considering certain circumstances that would have supported a decision to grant probation. She argues the trial court should have considered the following circumstances: (1) her crime was unlikely to recur (rule 4.414(a)(7)); (2) it was unlikely that she would be a danger to others were she not imprisoned (rule 4.414(b)(8)); (3) the likely effect of imprisonment on her (rule 4.414(b)(5)); (4) the adverse collateral consequence on her life because of her conviction (rule 4.414(b)(6)); and (5) the physical and emotional injuries that she inflicted on herself (rule 4.408(a)). Although the trial court did not expressly state it considered some or all of those circumstances, we note the probation report listed three of them (namely, circumstances 2, 3, and 4, listed above).[16] Also, in Weaver's statement in mitigation, she listed and discussed circumstances 1

---

[16] The probation report included as circumstances favoring a grant of probation: (1) "[i]mprisonment would likely have a negative effect on the defendant in that she has never served any significant time in custody" (rule 4.414(b)(5)); (2) "[t]he felony conviction will have adverse collateral consequences on the defendant's life, specifically on her life[-]long career goals" (rule 4.414(b)(6)); and (3) "[i]t appears unlikely that the defendant will be a danger to others if not imprisoned" (rule 4.414(b)(8)).

through 4, above, in support of her request for probation.[17] Because the trial court expressly stated on the record that it received and considered both of those documents, we presume the court did, in fact, consider those circumstances even though it did not expressly restate, recite, or otherwise refer to each one. As we noted above, unless the record affirmatively shows otherwise, a trial court is deemed to have considered all relevant criteria in deciding whether to grant or deny probation or in making any other discretionary sentencing choice. (Rule 4.409.) Regarding circumstance 5 suggested by Weaver, we also presume the trial court was aware of, and considered, the circumstances of Weaver's physical and emotional injuries in denying probation, despite the fact neither the court, nor any of the sentencing documents (including Weaver's own statement in mitigation), expressly referred to those injuries as a circumstance supporting a grant of probation.

Finally, Weaver argues the trial court improperly considered her youth as a factor that would support a grant of probation.[18] She argues a defendant's youth is not listed as a factor in rule 4.414, but is listed as a factor in rule 4.413(c)(2)(C), which only applies in unusual cases when probation is presumptively disfavored by statute. However, as noted above, rule 4.408(a) allows a court to consider additional factors not listed in the sentencing rules, provided those additional factors are stated on the record and are reasonably related to the decision being made. Because Weaver's youth is reasonably related to the court's decision whether to grant or deny probation, we conclude the court properly considered her youth as factor that would support a grant of probation.

E

Although we conclude the trial court did not abuse its discretion or otherwise err in considering circumstances regarding the grant or denial of probation, we further note that Weaver has not made any attempt to carry her appellate burden to show the errors purportedly made by the court were prejudicial. Alternatively stated, assuming arguendo the trial court erred as Weaver asserts, she has not shown it is reasonably probable the court would have granted her probation had it not so erred. (*People v. Price* (1991) 1

---

[17] The prosecution's statement in aggravation also listed and discussed circumstances (1) through (4), above, albeit *not* in a manner favorable to Weaver.

[18] The trial court stated in part: "Certainly in favor of grant of probation is *this young woman's youth*, her lack of significant record, just one speeding ticket and her absence of actual malice in this case[, h]er genuine remorse and her ability to comply with the conditions of probation if probation were granted." (Italics added.)

Cal.4th 324, 492 [3 Cal.Rptr.2d 106, 821 P.2d 610] ["When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper. [Citation.]"].) We conclude any error the trial court may have made in denying probation was harmless.

## II

### *Imposition of Middle Six-year Term*

Weaver contends the trial court abused its discretion by imposing the middle six-year term for her section 191.5, subdivision (a) offense. She argues the trial court considered certain improper factors as aggravating circumstances.

### A

After hearing arguments of counsel and denying probation, the trial court addressed the issue of what term of imprisonment to impose for Weaver's section 191.5, subdivision (a) offense, stating:

"With respect to the charge of manslaughter that brings us here today, there are three sentencing ranges. There is a sentencing range of three terms. These are four years, six years and ten years: the lower, the middle, and the upper term respectively. The Rules of Court direct that I look at the circumstances in aggravation and those in mitigation and that I weigh those and balance those. Those circumstances again look at the offense and the offender. There can be aggravated as well as mitigated circumstances about the offense and aggravated and mitigated circumstances about the offender.

"At the risk of oversimplifying it, if there is an aggravated offense with an aggravated offender, then the upper term is called for. That's the ten-year term. If there is a mitigated offense with a mitigated offender, then the lower term is called for. That's the term of four years. If one part of the coin is aggravated and the other part is mitigated, the court is asked to weigh qualitatively and quantitatively these factors and decide the appropriate term.

"Here the offense is aggravated. I have described that. I don't need to describe it again. I don't need to make people listen to that anymore. It is a dreadful loss and a horrifying event. The circumstances regarding Ms. Weaver are in this court's mind entirely mitigating, but for her decision to drive that night, which perhaps none of us will fully understand.

"I, therefore, conclude that the midterm of six years is appropriate with respect to the substantive charge . . . ."

Accordingly, the trial court imposed the middle six-year term for Weaver's section 191.5, subdivision (a) offense.

### B

■ A section 191.5, subdivision (a) offense (gross vehicular manslaughter while intoxicated) is punishable by imprisonment for four, six, or 10 years. (§ 191.5, subd. (c).) Section 1170, subdivision (b) provides: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, *the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime. . . . The court shall set forth on the record the facts and reasons for imposing the upper or lower term . . . .*" (Italics added.) Rule 4.420(a) provides: "When a sentence of imprisonment is imposed . . . , the sentencing judge must select the upper, middle, or lower term on each count for which the defendant has been convicted, as provided in section 1170[, subdivision] (b) and these rules. *The middle term must be selected unless imposition of the upper or lower term is justified by circumstances in aggravation or mitigation.*" (Italics added.)
■ Pursuant to section 1170, subdivision (b) and rule 4.420(a), "[t]he middle term is the presumptive term." (Levenson, Cal. Criminal Procedure (2006–2007) Sentencing, § 25:50, p. 1134.) The California Supreme Court stated: "[S]ection 1170, subdivision (b) can be characterized as establishing the middle term sentence as a presumptive sentence." (*People v. Black* (2005) 35 Cal.4th 1238, 1257 [29 Cal.Rptr.3d 740, 113 P.3d 534], overruled on another ground in *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856, 859] (hereafter *Cunningham*) [holding California's determinate sentencing law violates the 6th Amend. of the U.S. Const. to the extent it permits imposition of an upper term based on facts found by a trial court or by a preponderance of the evidence].)[19] "The trial court must impose the middle term unless it finds circumstances mitigating or aggravating the offense. [Citation.]" (*People v. Leung, supra,* 5 Cal.App.4th at p. 508.) "Because the middle term is the presumptive term, the sentencing court need not state reasons for selecting it, as it must for selection of either the lower or upper term. [Citations.]" (Cal. Criminal Law: Procedure and Practice (Cont.Ed.Bar 2006 ed.) Felony Sentencing, § 37.8, p. 1080.)

---

[19] *Cunningham* stated in part: "In sum, California's DSL [determinate sentencing law], and the rules governing its application, direct the sentencing court to start with the middle term, and to move from that term only when the court itself finds and places on the record facts—whether related to the offense or the offender—beyond the elements of the charged offense." (*Cunningham, supra,* 549 U.S. at p. ___ [127 S.Ct. at p. 862].) It further stated: "[T]he middle term prescribed under California law, not the upper term, is the relevant statutory maximum." (*Id.* at p. ___ [127 S.Ct. at p. 858].)

## C

Weaver argues the trial court abused its discretion by imposing the middle six-year term for her section 191.5, subdivision (a) offense because it erroneously relied on certain improper aggravating circumstances.[20] She also argues there is insufficient evidence to support the trial court's finding that the circumstances relating to the offense were aggravating.

■ Weaver asserts the trial court erred by relying on victim vulnerability as an aggravating circumstance. Citing *Bloom* and *Piceno*, discussed above, she argues victim vulnerability cannot be an aggravating circumstance because all victims of gross vehicular manslaughter are vulnerable. She argues all such offenses are "horrific" and all losses suffered by victims' families are "dreadful."[21] However, rule 4.421(a)(3) provides that circumstances in aggravation include whether "[t]he victim was particularly vulnerable." " '[P]articular vulnerability' is determined in light of the 'total milieu in which the commission of the crime occurred . . . .' [Citation.]" (*People v. Dancer* (1996) 45 Cal.App.4th 1677, 1694 [53 Cal.Rptr.2d 282], disapproved on another ground in *People v. Hammon* (1997) 15 Cal.4th 1117, 1123 [65 Cal.Rptr.2d 1, 938 P.2d 986].) As we concluded in part I, *ante*, there is substantial evidence to support a finding that Sigalov and Mara, in the circumstances of this case, were in fact particularly vulnerable victims of Weaver's crime. There is no empirical evidence in the appellate record showing that the "usual" victim of gross vehicular manslaughter has absolutely no advance warning or ability to attempt to avoid the defendant's car. On the contrary, one can envision many situations involving gross vehicular manslaughter (whether a § 191.5, subd. (a) offense or otherwise) in which the victim has at least some advance notice or warning of the imminent risk posed by the defendant's car that allows him or her at least some opportunity to attempt to avoid the collision. Those victims presumably should be considered less vulnerable than Sigalov and Mara in this case. Weaver's car was traveling in the opposite direction of oncoming traffic on northbound Interstate 5 at a high rate of speed. Despite the late-night darkness, its headlights were off. In contrast, the Sigalovs' car was traveling in the proper direction at a normal rate of speed and had its headlights on. Based on those circumstances, the trial court could have reasonably concluded Sigalov and Mara were *particularly* vulnerable because they, apparently unlike "usual" victims of gross vehicular manslaughter, had absolutely no advance warning or ability to attempt to avoid the oncoming car.

---

[20] For purposes of this opinion, we assume, without deciding, that Weaver did not forfeit or waive this contention by not timely objecting to the trial court's consideration of all or some of the purported improper circumstances.

[21] We presume Sigalov's physical injuries were not considered by the trial court in imposing the middle six-year term because those injuries were the basis of the separate three-year section 12022.7, subdivision (a) enhancement imposed by the court.

To the extent Weaver argues the trial court could not consider whether the offense was "horrific" or argues there is insufficient evidence to support that finding, we note rule 4.421(a)(1) permits a trial court to consider as an aggravating circumstance whether the offense "involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." The trial court's description of the offense as "horrific" may fall within that rule. In any event, rule 4.408(a) authorizes a trial court to consider "additional criteria reasonably related to the decision being made." The trial court could reasonably conclude the "horrific" nature of Weaver's offense was reasonably related to its sentencing choice. Therefore, it properly considered that factor as an aggravating circumstance.[22] Furthermore, contrary to Weaver's assertion, there is substantial evidence to support the trial court's finding that her offense was horrific. Weaver argues the evidence submitted in support of her motion to recall shows her conduct was not horrific and may have not constituted gross negligence. However, in sentencing Weaver, the trial court did not have that evidence before it and therefore we need not address that subsequently filed evidence.[23] In any event, assuming arguendo the trial court had received evidence at the time of sentencing showing Weaver had not planned to drive that night while intoxicated and decided to do so only after she became intoxicated when her then boyfriend pleaded with her to come home, the trial court could nevertheless reasonably conclude Weaver's conduct in deciding to drive and her actions in driving while intoxicated were horrific.

Furthermore, contrary to Weaver's assertion, we conclude the trial court reasonably considered as aggravating circumstances her continuation of driving after the "near-miss" prior to the collision, her high BAC, and the presence of cocaine in her system. There is substantial evidence to support those findings and rule 4.408(a) authorized the trial court to consider them in making its sentencing choice. Although Weaver argues those circumstances were not unlike circumstances in other section 191.5, subdivision (a) offenses, there is no requirement under rule 4.408 or 4.421 (or otherwise) that those circumstances be particularly egregious in comparison with other like offenses.

---

[22] We presume the "horrific" circumstances surrounding Weaver's offense considered by the trial court were not elements of her section 191.5, subdivision (a) offense and therefore were properly considered. "[W]here the facts surrounding the charged offense exceed the minimum necessary to establish the elements of the crime, the trial court can use such evidence to aggravate the sentence. [Citation.]" (*People v. Castorena* (1996) 51 Cal.App.4th 558, 562 [59 Cal.Rptr.2d 782].)

[23] Weaver does not challenge on appeal the trial court's order denying her motion to recall her sentence. Therefore, any additional evidence submitted in support of that motion cannot be considered in determining whether there is substantial evidence to support the trial court's earlier decision to impose the middle six-year term.

We conclude the trial court properly considered the aggravating circumstances of Weaver's offense in imposing the middle six-year term.[24] (Cf. *People v. Leung, supra*, 5 Cal.App.4th at p. 508 ["The middle term need not be additionally justified."].)

D

On January 22, 2007, after the parties' briefs were filed in this appeal, the United States Supreme Court issued its opinion in *Cunningham, supra*, 549 U.S. at p. ___ [127 S.Ct. 856]. We requested the parties submit, and have received and considered, supplemental briefs on the effect, if any, of *Cunningham* on this case. We asked the parties to address the question whether *Cunningham* requires a resentencing hearing in this case because the trial court, in imposing the middle six-year term, considered aggravating and mitigating circumstances not found true by a jury beyond a reasonable doubt.

In *Cunningham*, the court noted California's determinate sentencing law (DSL) and relevant sentencing rules "direct the sentencing court to start with the middle term, and to move from that term only when the court itself finds and places on the record facts—whether related to the offense or the offender—beyond the elements of the charged offense." (*Cunningham, supra*, 549 U.S. at p. ___ [127 S.Ct. at p. 862].) Furthermore, "an upper term sentence may be imposed only when the trial judge finds an aggravating circumstance." (*Id.* at p. ___ [127 S.Ct. at p. 868].) *Cunningham* concluded: "In accord with [*Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531]] therefore, *the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum.*" (*Id.* at p. ___ [127 S.Ct. at p. 868], italics added.) Accordingly, *Cunningham* held: "Because circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt [citation], the DSL violates *Apprendi*'s [*Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348]] bright-line rule: Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' [Citation.]" (*Id.* at p. ___ [127 S.Ct. at p. 868].) In rejecting the California Supreme Court's contrary conclusion in *People v. Black, supra*, 35 Cal.4th 1238, *Cunningham* stated: "Because the DSL allocates to judges sole authority to find facts permitting the imposition of an upper term sentence, the system violates the Sixth Amendment." (*Cunningham, supra*, at p. ___ [127 S.Ct. at p. 859].)

---

[24] We note Weaver's brief repeatedly argued there was insufficient evidence to support the imposition of the "upper" term of six years. However, as noted above, six years is the *middle* term and therefore that term is the presumptive sentence for a section 191.5, subdivision (a) offense. Weaver apparently attempts to characterize the trial court's decision to not impose the lower four-year term as in effect imposing an upper term.

Weaver argues: (1) the *"Blakely* waiver" in her change of plea form did not waive her right to proof of aggravating factors beyond a reasonable doubt; and (2) the trial court's imposition of the middle term in the circumstances of this case violated her Sixth Amendment rights. Assuming arguendo Weaver's change of plea form did not waive her right to proof of aggravating factors beyond a reasonable doubt, we nevertheless conclude the trial court properly imposed the middle six-year term. As she concedes, under California's sentencing laws, the middle term is the statutory presumptive term and a trial court can impose that term without stating its reasons. (§ 1170, subd. (b).)[25] Furthermore, rule 4.420(a) provides in part: "The middle term must be selected unless imposition of the upper or lower term is justified by circumstances in aggravation or mitigation." Because under section 1170, subdivision (b) and *Cunningham* the relevant statutory maximum sentence under California's DSL is the middle term, the Sixth Amendment is not implicated when a trial court imposes the middle term. As *Cunningham* noted, only a fact that increases a sentence beyond its prescribed statutory maximum (e.g., the middle term under California's DSL) requires its submission to a jury and proof beyond a reasonable doubt. (*Cunningham, supra*, at p. ___ [127 S.Ct. at p. 868]; *Apprendi v. New Jersey, supra*, 530 U.S. at p. 490.)

██ The fact the trial court considered the circumstances involving the offender (i.e., her personal circumstances) "entirely mitigating," did *not* make the lower four-year term (rather than the middle six-year term) the presumptive or relevant statutory maximum for purposes of the Sixth Amendment as discussed in *Apprendi* and *Cunningham.* Although the trial court weighed those mitigating circumstances against the aggravating circumstances of the offense in choosing to impose the middle six-year term, the presumptive or relevant statutory maximum remained the middle term at all times. Under California's DSL and the Sixth Amendment, as interpreted by *Apprendi* and *Cunningham,* there is no "shifting" relevant statutory maximum, as Weaver apparently asserts, where a trial court initially considers some mitigating circumstances (e.g., which, by themselves, might support imposition of a lower term), then considers other aggravating circumstances, and ultimately imposes the middle term after weighing all of the circumstances. Accordingly, the trial court's imposition of the middle six-year term in the circumstances of this case did not violate or implicate the Sixth and Fourteenth Amendments.

---

[25] As noted above, section 1170, subdivision (b) provides: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, *the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime. . . . The court shall set forth on the record the facts and reasons for imposing the upper or lower term. . . .*" (Italics added.)

## E

Although we conclude the trial court did not abuse its discretion or otherwise err in considering aggravating and mitigating circumstances in imposing the middle six-year term for Weaver's section 191.5, subdivision (a) offense, we further note she has not made any attempt to carry her appellate burden to show the errors purportedly made by the court were prejudicial. Alternatively stated, assuming arguendo the trial court erred as Weaver asserts, she has not shown it is reasonably probable the court would have imposed the lower four-year term had it not so erred. (*People v. Price*, *supra*, 1 Cal.4th at p. 492 ["When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper. [Citation.]"].) Accordingly, we conclude that any error the trial court may have made in imposing the middle term was harmless.

## III

### *Section 12202.7, Subdivision (a) Enhancement*

Weaver contends the trial court erred by imposing a three-year enhancement under section 12202.7, subdivision (a) for great bodily injury she personally inflicted on Sigalov in committing the section 191.5, subdivision (a) offense.

## A

Weaver pleaded guilty to gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)) and admitted the truth of the allegations that in committing that offense she personally inflicted great bodily injury on Sigalov (§ 12022.7, subd. (a)) and caused bodily injury or death (Veh. Code, § 23558). The trial court sentenced Weaver to the middle term of six years for her section 191.5, subdivision (a) offense and a consecutive three-year term for the section 12022.7, subdivision (a) enhancement, for a total term of nine years. Pursuant to section 654, the trial court stayed imposition of the one-year enhancement under Vehicle Code section 23558.

## B

Section 12022.7, subdivision (a) provides: "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony . . . shall be punished by an additional and

consecutive term of imprisonment in the state prison for three years." Section 12022.7, subdivision (g) provides: "This section shall not apply to murder or manslaughter or a violation of Section 451 or 452. Subdivision[] (a) . . . shall not apply if infliction of great bodily injury is an element of the offense." *People v. Guzman* (2000) 77 Cal.App.4th 761 [91 Cal.Rptr.2d 885] stated: "Section 12022.7 is a legislative attempt to punish more severely those crimes that actually result in great bodily injury. [Citation.] It applies except where serious bodily injury is already an element of the substantive offense charged. [Citation.]" (*Id.* at p. 765.)

In comparison, Vehicle Code section 23558 provides: "Any person who proximately causes bodily injury or death to more than one victim in any one instance of driving in violation of [Vehicle Code] Section 23153 of this code or in violation of Section 191.5 of, or paragraph (3) of subdivision (c) of Section 192 of, the Penal Code, shall, upon a felony conviction, and notwithstanding subdivision (g) of Section 1170.1 of the Penal Code, receive an enhancement of one year in the state prison for each additional injured victim. The enhanced sentence provided for in this section shall not be imposed unless the fact of the bodily injury to each additional victim is charged in the accusatory pleading and admitted or found to be true by the trier of fact. The maximum number of one year enhancements which may be imposed pursuant to this section is three."

C

Weaver asserts the trial court erred by imposing the three-year section 12022.7, subdivision (a) enhancement rather than the one-year Vehicle Code section 23558 enhancement because the latter statute (i.e., Veh. Code, § 23558) is the more specific statute and therefore preempts application of the more general statute (i.e., § 12022.7, subd. (a)).

■ "The preemption doctrine provides that a prosecution under a general criminal statute with a greater punishment is prohibited if the Legislature enacted a specific statute covering the same conduct *and intended* that the specific statute would apply exclusively to the charged conduct. [Citations.]" (*People v. Jones* (2003) 108 Cal.App.4th 455, 463 [133 Cal.Rptr.2d 358], italics added.) "The 'special over the general' rule, which generally applies where two *substantive* offenses compete, has also been applied in the context of enhancement statutes. [Citation.] The rule does not apply, however, unless 'each element of the "general" statute corresponds to an element on the face

of the "specific" [*sic*] statute' or 'it appears from the entire context that a violation of the "special" statute will necessarily or commonly result in a violation of the "general" statute.' [Citations.]" (*People v. Coronado* (1995) 12 Cal.4th 145, 153–154 [48 Cal.Rptr.2d 77, 906 P.2d 1232], quoting *People v. Jenkins* (1980) 28 Cal.3d 494, 502 [170 Cal.Rptr. 1, 620 P.2d 587].) In *Jenkins*, the California Supreme Court stated: "[T]he courts must consider the *context* in which the statutes are placed. If it appears from the entire context that a violation of the 'special' statute will necessarily or commonly result in a violation of the 'general' statute, the [preemption] rule *may* apply even though the elements of the general statute are not mirrored on the face of the special statute." (*Jenkins*, at p. 502, second italics added.) However, even if either of the two alternative tests are satisfied, the special statute will *not* be applied under the preemption doctrine if the Legislature intended the general statute to apply. (*People v. Sainz* (1999) 74 Cal.App.4th 565, 572 [88 Cal.Rptr.2d 203]; *Jones*, at p. 464.)

Weaver does *not* assert that the first alternative test of the preemption doctrine applies (i.e., that each element of § 12022.7, subd. (a) corresponds to an element on the face of Veh. Code, § 23558).[26] Rather, she asserts the second alternative test applies and thereby requires imposition of only the one-year enhancement under Vehicle Code section 23558 (and not the three-year enhancement under § 12022.7, subd. (a)). She argues that because a violation of Vehicle Code section 23558 (the special statute) will *commonly* result in a violation of section 12022.7, subdivision (a) (the general statute), the preemption doctrine applies and requires imposition of only the Vehicle Code section 23558 enhancement.[27] However, our review of those statutes does not support that assertion. Vehicle Code section 23558 applies to a defendant who "proximately causes bodily injury or death to more than one victim in any one instance of driving in violation of [Vehicle Code] Section 23153 of this code or in violation of Section 191.5 of, or paragraph (3) of subdivision (c) of Section 192 of, the Penal Code." Accordingly, its provisions may apply to three separate offenses: (1) driving while intoxicated and proximately causing bodily injury (Veh. Code, § 23153); (2) gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)); and (3) vehicular manslaughter while intoxicated but without gross negligence (§ 192, subd. (c)(3)). Because Vehicle Code section 23558 can

---

[26] Nevertheless, we note each element of section 12022.7, subdivision (a) does not correspond to an element of Vehicle Code section 23558. Section 12022.7, subdivision (a) requires "great bodily injury" while Vehicle Code section 23558 requires only "bodily injury." (*People v. Arndt* (1999) 76 Cal.App.4th 387, 393 [90 Cal.Rptr.2d 415].)

[27] Weaver concedes that a violation of Vehicle Code section 23558 (the special statute) will not *necessarily* result in a violation of section 12022.7, subdivision (a) (the general statute).

apply when the defendant drives while intoxicated and only *proximately* causes *bodily* injury, we cannot conclude Vehicle Code section 23558 will *commonly* result in a violation of section 12022.7, subdivision (a), which statute requires *personal* infliction of *great bodily* injury. Furthermore, our independent review of the appellate record shows it does not contain any empirical evidence proving that driving while intoxicated and proximately causing bodily injury also commonly results in personal infliction of great bodily injury. Although Weaver argues a section 191.5, subdivision (a) offense commonly results in personal infliction of great bodily injury, that offense is only one of the three offenses listed in Vehicle Code section 23558. (Cf. *People v. Arndt, supra,* 76 Cal.App.4th at p. 393 ["The conduct triggering the application of Vehicle Code section 23182 [predecessor to Vehicle Code section 23558] will not necessarily result in the application of section . . . 12022.7."].)

In any event, we conclude the legislative intent of section 12022.7, subdivision (a) shows its greater three-year enhancement was intended to apply despite the potential availability of lesser enhancements. "A plain reading of . . . section 12022.7 indicates the Legislature intended it to be applied broadly." (*People v. Sainz, supra,* 74 Cal.App.4th at p. 574 [concluding former Veh. Code, § 23190, subds. (b) & (c), as the purported *special* statute, did not preclude imposition of a § 12022.7 enhancement].) "[T]he Legislature may provide for increased *punishment* for an offense that has more serious consequences by, for instance, . . . adding enhancements . . . ." (*Wilkoff v. Superior Court* (1985) 38 Cal.3d 345, 352 [211 Cal.Rptr. 742, 696 P.2d 134], superseded by statute on another ground as noted in *People v. Arndt, supra,* 76 Cal.App.4th at pp. 393–394.) The purpose of Vehicle Code section 23558 "is to increase the potential punishment available in certain cases where an alcohol- or drug-impaired individual operating a vehicle or watercraft causes an accident which results in multiple injuries, *not to limit the use of another otherwise applicable enhancement* [e.g., section 12022.7]." (*People v. Arndt, supra,* 76 Cal.App.4th at p. 394, italics added.) We cannot conclude the Legislature intended only a one-year enhancement be imposed under Vehicle Code section 23558 when a defendant commits a section 191.5, subdivision (a) offense and personally inflicts great bodily injury (which conduct would otherwise result in imposition of a three-year enhancement under § 12022.7, subd. (a)). (Cf. *People v. Corban* (2006) 138 Cal.App.4th 1111, 1118–1119 [42 Cal.Rptr.3d 184] [defendant did not show the Legislature intended § 12022.95, as the purported *special* statute, to apply instead of § 12022.7, subd. (d)].)

## D

Weaver also asserts the trial court erred by imposing the three-year section 12022.7, subdivision (a) enhancement because she pleaded guilty only to a charged section 191.5, subdivision (a) offense, which is "victim-specific" (i.e., Mara was the victim of that offense), thereby precluding a section 12022.7, subdivision (a) enhancement for her personal infliction of great bodily injury on the other person injured in the collision (e.g., Sigalov). Although she notes that in *People v. Verlinde* (2002) 100 Cal.App.4th 1146 [123 Cal.Rptr.2d 322] we concluded a section 12022.7, subdivision (a) enhancement *could* be imposed for injuries to persons other than the deceased victim in a vehicular manslaughter, she attempts to distinguish that case by noting in *Verlinde* the defendant was convicted of both vehicular manslaughter while intoxicated (§ 191.5, subd. (a)) and driving under the influence and causing bodily injury (Veh. Code, § 23153, subds. (a), (b)). (*Verlinde*, at p. 1154.) Because in *Verlinde* the section 12022.7, subdivision (a) enhancement could have been independently imposed based on the lesser Vehicle Code section 23153, subdivision (a) or (b) offense, Weaver argues *Verlinde* is inapposite because it involved also a "non-victim-specific" offense and therefore its reasoning cannot be applied to her case.

In *Verlinde*, we rejected the defendant's argument that a section 12022.7, subdivision (a) enhancement could not apply because section 12022.7, subdivision (g) precludes application of section 12022.7's enhancement provisions to murder and manslaughter offenses. We stated: "The language of section 12022.7, subdivision (g) does not limit application of the statute to this vehicular manslaughter case where, in addition to the homicide victim, two other victims suffered great bodily injury. The statutory exemption for murder and manslaughter is intended to bar imposition of an enhancement for the injuries inflicted on the homicide victim, who obviously has suffered great bodily injury. Thus, the statutory exemption prevents prohibited dual punishment for the same crime. (See § 654.) 'When a defendant engages in violent conduct that injures several persons, he may be separately punished for injuring each of those persons, notwithstanding section 654. [Citation.]' [Citation.] *Verlinde's argument is inconsistent with a fundamental objective of our penal justice system, namely 'that one's culpability and punishment should be commensurate with the gravity of both the criminal act undertaken and the resulting injuries.'* [Citation.] Furthermore, a fundamental principle of statutory construction is that *the language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.* [Citation.]" (*People v. Verlinde, supra,* 100 Cal.App.4th at pp. 1168–1169, italics added.) Accordingly, we upheld the trial

court's imposition of a three-year section 12022.7, subdivision (a) enhancement for the person(s) injured other than the deceased victim of the vehicular manslaughter. (*People v. Verlinde, supra,* at p. 1169.)[28]

██ We are not persuaded by Weaver's attempt to avoid the application of *Verlinde* to her case based on the difference that the defendant in *Verlinde* was convicted of both a "victim-specific" offense and a "non-victim-specific" offense. There is no logical reason to preclude application of section 12022.7, subdivision (a) when a defendant personally inflicts great bodily injury on persons other than the victim of a "victim-specific" offense, but to allow its application when those other persons were injured in the commission of a "non-victim-specific" offense. For example, in *Arndt* the trial court imposed a separate section 12022.7 enhancement for each of the three persons on whom the defendant personally inflicted great bodily injury in the commission of one "non-victim-specific" offense (i.e., Veh. Code, § 23153, subd. (a)). (*People v. Arndt, supra,* 76 Cal.App.4th at pp. 391–392.) *Arndt* upheld imposition of the three separate section 12022.7 enhancements because the defendant "inflicted great bodily injury on three separate persons." (76 Cal.App.4th at p. 399.) There is no discernable reason a defendant's punishment should be less when the persons on whom he or she personally inflicted injuries were injured in the commission of a "victim-specific" offense, rather than a "non-victim-specific" offense.

Weaver does not persuade us that section 12022.7, subdivision (a) is inapplicable in a case involving only a "victim-specific" murder or manslaughter offense where a person other than the deceased victim sustains great bodily injury. First, and most importantly, we note the express language of section 12022.7, subdivision (a) does *not* limit its application to a specific *victim* of a felony offense. Rather, it applies to great bodily injuries sustained by "any *person* other than an accomplice." (§ 12022.7, subd. (a), italics added.) Second, its express language also applies when the defendant personally inflicts great bodily injury on any person "*in the commission* of a felony." (§ 12022.7, subd. (a), italics added.) That language is sufficiently broad to include persons other than the victim of a victim-specific felony offense who sustain great bodily injury during the defendant's commission of that offense. Had the Legislature intended to limit section 12022.7, subdivision (a)'s

---

[28] Regarding the second person injured other than the deceased victim, we remanded the matter for a determination whether he was an accomplice within the meaning of section 12022.7, subdivision (a), which, if found to be true, would preclude the imposition of a second three-year section 12022.7, subdivision (a) enhancement. (*People v. Verlinde, supra,* 100 Cal.App.4th at p. 1169.)

application to only the ostensible victim injured in the commission of a felony offense, it could have expressly so provided. (Cf. § 12022.8 [imposing enhanced punishment for infliction of great bodily injury "on any victim"]; *People v. Miller* (1977) 18 Cal.3d 873, 881, fn. 5 [135 Cal.Rptr. 654, 558 P.2d 552] [enhancement statute that expressly applies to great bodily injury to a victim, rather than a person, does not apply "to persons who, unfortunately, are incidentally caught up in the events constituting the crime . . . ."], overruled on another ground as noted in *People v. Oates* (2004) 32 Cal.4th 1048, 1068, fn. 8 [12 Cal.Rptr.3d 325, 88 P.3d 56].) Furthermore, we note it is generally appropriate that a defendant be subject to greater punishment for committing an offense if his or her commission of that offense causes injuries to multiple persons. (*People v. Alvarez* (1992) 9 Cal.App.4th 121, 128 [11 Cal.Rptr.2d 463]; *People v. Pantoja* (2004) 122 Cal.App.4th 1, 16 [18 Cal.Rptr.3d 492].) It is consistent with our criminal justice system to impose greater punishment on Weaver for the great bodily injuries she personally inflicted on Sigalov during her commission of the section 191.5, subdivision (a) offense that caused Mara's death.

In an analogous case, the California Supreme Court in *People v. Oates*, *supra*, 32 Cal.4th 1048 rejected a similar contention made regarding the imposition of an enhancement under section 12022.53, subdivision (d), which contains language that parallels that of section 12022.7, subdivision (a).[29] In *Oates*, the defendant discharged a gun into a group of five people, injuring one of the persons in that group. (*Oates*, at p. 1053.) The jury convicted the defendant of five offenses of attempted murder and found true, as to each offense, a section 12022.53 allegation relating to the injury sustained by the one person. (*Oates*, at p. 1053.) Therefore, as to four of the five "victim-specific" offenses of attempted murder, a section 12022.53 enhancement was imposed for the injury sustained by a person other than the ostensible victim of that attempted murder.[30] (*People v. Oates, supra*, 32 Cal.4th at pp. 1053–1054.) On appeal, the defendant argued the trial court should have imposed only one section 12022.53 enhancement (relating to the attempted murder offense involving the person actually injured). (*Oates*, at p. 1054.) *Oates* rejected that contention, stating:

---

[29] Section 12022.53, subdivision (d) provides: "[A]ny person who, *in the commission of a felony* specified in subdivision (a) [e.g., murder or attempted murder] . . . , personally and intentionally discharges a firearm and proximately *causes great bodily injury, as defined in Section 12022.7*, or death, *to any person* other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life." (Italics added.)

[30] A fifth section 12022.53 enhancement was imposed in connection with the attempted murder offense involving the person who actually sustained the great bodily injury. (*People v. Oates, supra*, 32 Cal.4th at pp. 1053–1054.)

"In several respects, the language of section 12022.53 supports imposing multiple subdivision (d) enhancements under the circumstances here. First, by its terms, the subdivision (d) enhancement applies to 'any person' who, 'in the commission of' a specified felony, 'personally and intentionally discharges a firearm and proximately causes great bodily injury . . . or death, *to any person other than an accomplice.*' (Italics added.) Based on the single injury to Barrera, the requirements of a subdivision (d) enhancement are met as to *each* of defendant's five attempted murder convictions, including those not involving the attempted murder of Barrera; . . . in the commission of each [attempted murder] offense, defendant 'personally and intentionally discharge[d] a firearm and proximately cause[d] great bodily injury' to a person 'other than an accomplice.' (§ 12022.53, subd. (d).)

"Notably, the parties here agree that the phrase, 'any person other than an accomplice,' does not mean 'the victim' of the underlying crime. For example, defendant asserts in his brief that the elements of a subdivision (d) enhancement 'require the imposition of the enhancement even if the injured person is not a victim of crime, such as if he or she was injured by a stray bullet.' Thus, '[i]f there is a qualifying substantive offense, if a firearm is intentionally discharged, and if anyone (but an accomplice), i.e., either the victim or a nearby "non-victim"—a person who is injured but is not the victim of an enumerated offense—suffers great bodily injury, the enhancement attaches to the offense.' In other words, as defendant explains, 'the "any person other than an accomplice" language is sufficiently indisputable to ensure the imposition of the enhancement if a person other than the victim of the qualifying felony suffers a great bodily injury.' This reading of the statute is consistent with our recent statement that, as '[a]pplied to a defendant/shooter, this enhancement is arguably unambiguous: a defendant who is convicted of a specified felony[,] and is found to have intentionally and personally discharged a firearm proximately causing great bodily injury or death when committing that felony, is subject to section 12022.53, subdivision (d). [Citation.]' [Citation.] It is also consistent with the fact that the Legislature knows how to limit enhancements to harm done to a 'victim' when that is its intent. (See § 12022.8 [imposing enhanced punishment for 'inflict[ing] great bodily injury . . . on any victim']; see also *People v. Miller*[, *supra*,] 18 Cal.3d [at p.] 881, fn. 5 [135 Cal.Rptr. 654, 558 P.2d 552] . . . [enhancement statute that 'expressly provides for its application upon great bodily injury to a "victim" rather than to a "person" ' does not apply 'in the case of injury to persons who, unfortunately, are incidentally caught up in the events constituting the crime']].)" (*People v. Oates, supra*, 32 Cal.4th at pp. 1055–1056.) *Oates* concluded: "Because *the requirements of the subdivision (d) enhancement have been satisfied as to each of defendant's attempted murder convictions*, subdivision (f) of section 12022.53 *requires*

that the enhancement be imposed as to each conviction."[31] (*People v. Oates, supra*, 32 Cal.4th at p. 1056, first italics added.) *Oates* noted: "Had the Legislature wanted to limit the number of subdivision (d) enhancements imposed to the number of injuries inflicted, or had it not wanted subdivision (d) to serve as the enhancement applicable to each qualifying conviction where there is only one qualifying injury, it could have said so." (*Ibid.*)

*Oates* also rejected the defendant's argument that his proffered interpretation of analogous language in section 12022.7 precluded application of section 12022.53 enhancements as to offenses not involving the injured person, stating:

"Defendant also argues that we should construe section 12022.53, subdivision (d), like section 12022.7, which, in language similar to section 12022.53, subdivision (d), provides an enhancement for anyone 'who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony.' (§ 12022.7, subd. (a).) According to defendant, '[n]o reported case has held that more [section 12022.7] enhancements than the actual number of injuries may be found and imposed' or that such an enhancement may be found and 'imposed not only on [the conviction involving] the injured victim but also as to [the convictions involving] the uninjured victims as well.' Defendant argues we should similarly interpret subdivision (d).

"Defendant's argument is unpersuasive. Notwithstanding his assertions, defendant concedes that '[t]here is "no intimation" in section 12022.7' that ' "only one such enhancement could be employed in any given case" ' where only one person suffers injury. Moreover, defendant cites no case—and we have found none—supporting his construction of section 12022.7. On the other hand, as defendant notes, in *People v. Moringlane* (1982) 127 Cal.App.3d 811, 815–817 [179 Cal.Rptr. 726] (*Moringlane*), the trial court imposed three 'bodily injury' enhancements, presumably under section 12022.7, based on the defendant's infliction of a single injury on one of the three people he simultaneously assaulted. Although the appellate court later held that multiple enhancements were improper, it based its decision on section 654, not on the construction of section 12022.7. [Citation.] Moreover, given *Moringlane*'s holding in 1982 that section 654 bars imposition of multiple enhancements, it is not surprising that no reported case has considered whether section 12022.7 itself authorizes multiple enhancements under

---

[31] Section 12022.53, subdivision (f) provides: "If more than one enhancement per person is found true under this section, the court shall impose upon that person the enhancement that provides the longest term of imprisonment."

the circumstances here. Finally, defendant cites—and we find—nothing in the legislative history of section 12022.7 to support his interpretation of that statute. Because nothing supports defendant's construction of section 12022.7, his argument based on that construction fails." (*People v. Oates, supra,* 32 Cal.4th at pp. 1060–1061, fns. omitted.)

Accordingly, the California Supreme Court upheld the trial court's imposition of all five section 12022.53, subdivision (d) enhancements. (*People v. Oates, supra,* 32 Cal.4th at p. 1062.)[32] Because *Oates* involved an analogous enhancement statute and upheld the imposition of great bodily injury enhancements related to "victim-specific" offenses when the ostensible victims of those offenses were not persons injured by the defendant in the commission of those offenses, we conclude the reasoning in *Oates* applies to this case and supports our interpretation of section 12022.7, subdivision (a).

In an apposite case involving interpretation of section 12022.7, *People v. Ausbie* (2004) 123 Cal.App.4th 855 [20 Cal.Rptr.3d 371] concluded two section 12022.7, subdivision (a) enhancements were properly imposed relating to the two persons on whom the defendant personally inflicted great bodily injury in the commission of only one offense of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)). (*Ausbie,* at pp. 857–858, 865.) Like the section 191.5, subdivision (a) offense in this case, a section 245, subdivision (a)(1) offense is a "victim-specific" offense because it is committed against a particular victim.[33] In concluding section

---

[32] In a concurring opinion joined by Justices Kennard and Moreno, Justice Werdegar essentially agreed with the majority opinion's reasoning, stating in part: "The drafters of section 12022.53, subdivision (d), however, did not limit its application to qualifying offenses involving great bodily injury to the *victim* of the underlying offense, but, rather, offenses in the commission of which the defendant causes great bodily injury to 'any person other than an accomplice.' Moreover, there may be circumstances—as when a qualifying offense has been committed against an uninjured victim but not the injured victim—in which imposing a subdivision (d) enhancement for injury to someone other than the victim of the underlying crime will best fit the punishment to the crime. The majority is thus probably correct that subdivision (d)'s specification that the injurious discharge of a firearm must have occurred 'in the commission of' the underlying qualifying felony *was not intended to limit enhancements to cases where the victim in that felony sustained great bodily injury.* Nor does any other language in the statute clearly limit the number of subdivision (d) enhancements that may be imposed based on a single gunfire injury." (*People v. Oates, supra,* 32 Cal.4th at pp. 1070–1071 (conc. opn. of Werdegar, J.), italics added.)

[33] Although the information in *Ausbie* apparently did not specify which of the two injured persons was the ostensible victim of the section 245, subdivision (a)(1) offense, for purposes of analogy *Ausbie* is apposite to this case because there presumably was only one victim of that assault and therefore the other injured person, as in this case, was not the ostensible victim of the offense underlying the section 12022.7, subdivision (a) enhancement. (*People v. Ausbie, supra,* 123 Cal.App.4th at p. 864.) To the extent the information included both injured persons as ostensible victims of the single charged section 245, subdivision (a)(1) offense, we nevertheless conclude *Ausbie* supports our reasoning.

12022.7, subdivision (h)[34] did not prohibit the imposition of multiple section 12022.7, subdivision (a) enhancements relating to one underlying offense, *Ausbie* stated:

"We . . . construe section 12022.7, subdivision (h) as limiting the sentencing court to one of the subdivision (a), (b), (c), or (d) enhancements for each injured victim, *but not as prohibiting the court from imposing a section 12022.7 enhancement for each victim of a single offense when there are multiple victims who suffered great bodily injury.*

"Our construction of section 12022.7, subdivision (h) is consistent with the general principle that *the law requires greater punishment when there are multiple victims.* This state has long recognized that *multiple punishment is proper when a single act of violence injures or kills multiple victims.* [Citations.]" (*People v. Ausbie, supra,* 123 Cal.App.4th at pp. 864–865, italics added.)

Therefore, *Ausbie* upheld the trial court's imposition of two section 12022.7, subdivision (a) enhancements relating to only one victim-specific section 245, subdivision (a)(1) offense. (*People v. Ausbie, supra,* 123 Cal.App.4th at p. 865.)

Based on *Verlinde, Oates* and *Ausbie,* we conclude a section 12022.7, subdivision (a) enhancement may apply to a victim-specific offense (e.g., a § 191.5, subd. (a) offense) even when the ostensible victim of that offense was not, for purposes of section 12022.7, subdivision (a), the person on whom the defendant personally inflicted great bodily injury in the commission of that offense. The trial court properly imposed the three-year section 12022.7, subdivision (a) enhancement. Weaver does not cite, and we have not found, any case in support of her argument to the contrary.[35]

---

[34] Section 12022.7, subdivision (h) provides: "The court shall impose the additional terms of imprisonment under either subdivision (a), (b), (c), or (d), but may not impose more than one of those terms for the same offense."

[35] To the extent Weaver relies on *People v. Beltran* (2000) 82 Cal.App.4th 693 [98 Cal.Rptr.2d 730] as support for her contention, that case is inapposite and, in any event, we decline to apply its reasoning here because of our contrary reasoning in *Verlinde.* In *Beltran,* a section 12022.7, subdivision (c) allegation was found true as to each of the offenses of evasion of a pursuing police officer that caused serious injuries (Veh. Code, § 2800.3) and vehicular manslaughter (§ 192, subd. (c)(1)). (*Beltran,* at p. 695.) Without any substantive reasoning, *Beltran* first summarily concluded a section 12022.7 enhancement could not apply to the vehicular manslaughter offense regarding injuries sustained by a person other than the deceased victim because then section 12022.7, subdivision (f) (now subdivision (g)) provided section 12022.7 shall not apply to murder or manslaughter. (*Beltran,* at p. 696.) Based on our reasoning in *Verlinde,* quoted above, we disagree with that conclusion by *Beltran* and decline to apply it to this case. *Beltran* then substantively addressed the question of whether a section 12022.7, subdivision (c) enhancement could not apply to the Vehicle Code section 2800.3

## IV

### *Section 1192.7, Subdivision (c)(8) Allegations*

Weaver contends her conviction of only one offense precludes a court from considering that conviction as *two* prior serious felony convictions within the meaning of section 1192.7, subdivision (c)(8) and the three strikes law (§ 667, subds. (b)–(i)). She apparently is concerned that the true findings on the two section 1192.7, subdivision (c)(8) allegations related to her one "serious felony" conviction would allow a court in the future to treat her as having two prior "strike" convictions.[36] Weaver argues: "The allegations will be used to support separate strikes under Penal Code section 667, subds. (b)–(i), in the event that Ms. Weaver is convicted of a felony in the future." She therefore argues only one section 1192.7, subdivision (c)(8) allegation should apply to her one section 191.5, subdivision (a) offense.

However, the trial court in this case did *not* make any decision whether Weaver's section 191.5, subdivision (a) conviction could be considered, in the future, as two prior "strike" convictions based on her admission of the truth of the two section 1192.7, subdivision (c)(8) allegations. Rather, Weaver is concerned with only a possible *future* decision by a court that she may be considered to have two prior "strike" convictions within the meaning of the three strikes law. That contention is not properly raised in this appeal from the instant judgment.[37] (§ 1237.) Accordingly, Weaver's contention is premature and we need not address it.

---

offense because section 12022.7, subdivision (c)'s elements were included in that underlying offense of evasion of a pursuing police officer that caused serious injuries to others (Veh. Code, § 2800.3). (*Beltran*, at pp. 695–697.) *Beltran* concluded the elements of that enhancement were included in the underlying offense and therefore the enhancement could not be imposed as to that offense. (*Id.* at pp. 696–697.) Therefore, that aspect of *Beltran* is inapposite and does not persuade us to conclude otherwise.

We further note that Weaver's victim-specific argument in this part IIID. is logically inconsistent with her argument in part IIIC., *ante*, that a one-year Vehicle Code section 23558 enhancement should apply instead of a three-year section 12022.7, subdivision (a) enhancement. Under Weaver's instant argument, neither enhancement could apply in the circumstances of this case.

[36] Weaver admitted the allegations related to her section 191.5, subdivision (a) offense, including an allegation that in committing that offense she personally inflicted great bodily injury on Mara within the meaning of section 1192.7, subdivision (c)(8) and an allegation that in committing that offense she personally inflicted great bodily injury on Sigalov within the meaning of section 1192.7, subdivision (c)(8).

[37] To the extent Weaver argues her admission of the truth of the two section 1192.7, subdivision (c)(8) allegations may affect her placement status in prison, the appellate record does not show that her prison placement has, in fact, been affected by those admissions. If, and when, those admissions affect her prison placement, she may then seek whatever recourse may be available to her.

V

*Victim Restitution Fine*

Weaver contends the victim restitution fine imposed by the trial court must be offset or reduced by the amount paid by her insurance company. She states her insurance company paid the victim(s) of her offense $200,000, thereby requiring an equivalent reduction in the victim restitution fine of $229,269.97 imposed by the trial court pursuant to section 1202.4.[38]

However, the record on appeal does not show her insurance company paid $200,000 to the victim(s) of Weaver's offense. Weaver asserts: "Defense counsel submitted in the statement of [mitigation] evidence showing that Ms. Weaver's insurance company paid the $200,000 policy limit to the Sigalovs." In support of that assertion, she cites page 149 of the clerk's transcript, which is a copy of a letter attached to her statement in mitigation. That letter, dated February 24, 2005, is from David A. Delbon, an attorney apparently representing Sigalov, to Brian McCarthy, Weaver's defense attorney. In that letter, Delbon states in part: "Further to my recent telephone message, plaintiff/claimant Anatoly Sigalov has agreed to accept CSAA's policy limit of $100,000 on the wrongful death claim, and a separate $100,000 on his own personal injury claim. We are in the process of exchanging closing papers which will include a Release of All Demands to be signed on both claims by Anatoly Sigalov. Once the documents are signed and the draft is forwarded to claimant, the civil matter will be resolved. We expect to close our file within the next four weeks." It is clear from the content of that letter that the pending settlement of Sigalov's claims had not yet been finalized in writing and Weaver's insurance company had not yet paid any money to Sigalov. Therefore, that letter does not support her assertion that her insurance company had, in fact, paid $200,000 to Sigalov as a victim of her offense. Absent proof that her insurance company paid that amount to Sigalov as a victim of her offense, there is no basis on which to offset or otherwise reduce the amount of the victim restitution fine imposed by the trial court.

In any event, as the People note, in imposing the victim restitution fine at the sentencing hearing, the trial court expressly retained jurisdiction to modify the amount imposed on application of either party (i.e., Sigalov or

---

[38] We note, but do not resolve, the apparent discrepancy between the amount of the victim restitution fine reflected in the reporter's transcript (i.e., $229,479) and the amount reflected in the clerk's transcript (i.e., $229,269.97).

Weaver). The court stated: "The court will set restitution at this time in the amount of $229,479 subject to modification upward or downward on the application by counsel and a hearing can be held." It later stated: "The superior court will continue to retain jurisdiction to amend the judgment and to address restitution." In subsequently denying Weaver's motion to recall her sentence, the trial court stated in part: "On the limited issue of reduction of restitution based on payments by the defendant's insurance company, counsel should meet and confer to determine if a stipulated adjustment to the restitution figure is appropriate or if the matter needs to be set for hearing on that issue alone." The appellate record does not contain any evidence showing either that the parties stipulated to modification of the victim restitution fine or that Weaver properly requested, and the trial court held, a hearing on modification of that fine.

 Section 1202.4, subdivision (f) provides that a victim restitution fine may be established, or presumably modified, by the trial court after the sentencing hearing, stating in part: "If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court." That is in effect what the trial court did in this case. Furthermore, section 1202.4, subdivision (f)(1) provides a defendant with a right to a hearing on the amount of a victim restitution fine, stating: "The defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution. The court may modify the amount, on its own motion or on the motion of the district attorney, the victim or victims, or the defendant. If a motion is made for modification of a restitution order, the victim shall be notified of that motion at least 10 days prior to the proceeding held to decide the motion." The appellate record does not show that Weaver (or the prosecutor or Sigalov) requested a hearing to modify the amount of the victim restitution fine imposed by the trial court at Weaver's sentencing. Therefore, to the extent Weaver wishes the amount of that fine to be offset or reduced by all or part of any payment made by her insurance company to Sigalov, she must first follow the appropriate procedures set forth in section 1202.4 by requesting a modification hearing and obtaining an order of the trial court on that request. She may then seek relief in the appellate court for any purported error by the trial court. We conclude Weaver's contention is premature and we need not address its substance.[39]

---

[39] Although Weaver cites *People v. Jennings* (2005) 128 Cal.App.4th 42 [26 Cal.Rptr.3d 709] in support of her contention, that case is inapposite because the appellate record there showed the defendant's insurance company had paid money to the victim and the defendant had properly requested, and received, a modification hearing in the trial court. (*Id.* at pp. 47–49.)

## DISPOSITION

The judgment is affirmed.

Nares, Acting P. J., and McIntyre, J., concurred.

A petition for a rehearing was denied May 3, 2007, and appellant's petition for review by the Supreme Court was denied July 25, 2007, S152392. Werdegar, J., did not participate therein.