Filed 10/15/13  P. v. Reynolds CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>JAMES D. REYNOLDS,<br><br>          Defendant and Appellant. | A137792<br><br>(Sonoma County<br>Super. Ct. No. SCR-616010) |

Appellant James D. Reynolds entered pleas of no contest to a felony violation of Penal Code section 646.9, subdivision (a),[1] stalking, and to a misdemeanor violation of section 148, subdivision (a)(1), resisting, delaying or obstructing a police officer. Reynolds was sentenced to the upper term of three years in state prison on the felony charge, with a concurrent term of one year in county jail on the misdemeanor.  At the time of sentencing, the court "strongly encourage[d] the Department of Corrections [and Rehabilitation] to immediately assess Mr. Reynolds for mental health treatment within the prison system" and to assess Reynolds's qualification as a mentally disordered offender (MDO).[2]

Reynolds contends the court's statement reflects that the "primary reason" for the prison sentence was to make him eligible for MDO status, and that the trial court abused

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] The MDO law mandates treatment for prison inmates with severe mental disorders who meet certain specified criteria (see § 2962) and can result in involuntary civil commitments for treatment beyond the term of imprisonment (§§ 2970, 2972).

1

its sentencing discretion in "use of the hope [Reynolds] would be found an MDO to deny probation and send [him] to prison." We disagree with Reynolds's characterization of the trial court record and find no abuse of discretion. We therefore affirm.

## I. BACKGROUND

Reynolds does not challenge his conviction. We therefore address the underlying facts of the offenses only as they are relevant to the court's sentencing choices.

On March 11, 2012, Sonoma County Sheriff's deputies were called when Reynolds threatened to kill his former employer, J.F. When the deputies arrived, Reynolds had a large knife sticking out of his back pocket, and was making threats to kill J.F. Reynolds refused the deputies' orders to lie on the ground and pulled out the knife, waived it in the air, and continued his threats. Reynolds tossed the knife in the direction of one of the officers and was taken into custody. Reynolds, who was known to the deputies as an extreme alcoholic, had no odor of alcohol about him at the time, but appeared delusional. Reynolds accused the officers of being in a conspiracy with Satan, accused the victim of molesting his daughter, and talked about invisible people standing next to the deputy and hiding in trees. Reynolds had previously threatened J.F.'s life in October 2011. A mental health hold under Welfare and Institutions Code section 5150 was placed on Reynolds.

On March 17, 2012, Reynolds told J.F.'s girlfriend that he was going to go to J.F.'s house and kill J.F. When a sheriff's deputy went to Reynolds's home, Reynolds had been drinking, a violation of the terms of his probation on another matter. Reynolds denied threatening J.F., but said that J.F. was a child molester who was stealing energy from the ground and God, and that J.F. had stolen Reynolds's 62 children. When arrested for the probation violation, Reynolds told the deputy that the next time he was arrested, it would be for killing J.F.

Reynolds was interviewed while in custody about the allegations that his daughter had been sexually molested. The interviewing officer said that Reynolds appeared "fixated" on J.F., that Reynolds's thoughts were disorganized and "[h]is behavior was . . . alarming."

2

On March 20, 2012, Reynolds was charged by felony complaint with threatening to kill J.F. (§ 422.) On March 26, defense counsel declared a doubt about Reynolds's competence (§ 1368), and criminal proceedings were suspended. The psychiatric evaluation report found that Reynolds was not competent to assist in his defense. The examining psychiatrist found Reynolds delusional, without insight into his condition, and refusing medication. On May 7, the court found Reynolds incompetent and ordered him detained in the Napa State Hospital. On August 31, the court found that Reynolds's competency had been restored and criminal proceedings were reinstated. A first amended felony complaint was filed charging Reynolds with two counts of criminal threats to commit a crime which would result in death and great bodily injury to J.F. (§ 422; counts 1, 2), threatening violence upon police officers (§ 69; counts 3, 5), and resisting, delaying or obstructing a police officer (§ 148, subd. (a)(1); counts 4, 6).

On November 1, 2012, the complaint was amended to add the stalking charge (§ 646.9, subd. (a); count 7), and Reynolds entered pleas of no contest to counts 6 and 7 and admitted a probation violation. As part of the plea agreement, the court agreed to dismiss the remaining counts in the amended complaint, as well as charges then pending in other cases. No promises were made as to the sentence that would be imposed.

At a sentencing hearing on January 28, 2013, the district attorney asked the court to impose the three-year aggravated term because Reynolds "presents[s] an imminent risk of very realistic fatal harm to the victim" and that "prison is really the only viable way to potential lifelong care and treatment, psychiatric treatment, for [Reynolds] . . . ." Reynold's counsel argued for a probationary sentence. Defense counsel contended that "it is by no means assured that Mr. Reynolds would be deemed an MDO in terms of going into the prison system," and said that "to place him into prison on the hope that he would be deemed MDO also is a pretty drastic remedy for Mr. Reynolds in terms of if he is not deemed MDO . . . ."

The court noted that it had reviewed the probation presentencing report, a probation supplemental report, and a report from Napa State Hospital. The court denied probation, expressing its concern for long-term protection of the victim and indicating

3

that it had no confidence that Reynolds would comply with conditions of probation. The court again noted its review of the record and reports and its concern with the fact that Reynolds "has a very long history of alcohol related crimes, and he's had some treatment voluntarily in the past and yet has found himself here." The court sentenced Reynolds to the three-year upper term on count 7, listing the aggravating sentencing factors as: "One, he does have a long history of offenses related to alcohol and substance abuse. He was on probation at the time that this incident occurred. Also the Court finds most compelling that he was taking actions really in furtherance of his threats at one of the times that he was contacted by law enforcement, and quite frankly, Mr. Reynolds, I think you are quite fortunate that you didn't end up being shot by law enforcement on that night." The court also expressed its concern with Reynolds's "lack of incite [*sic*] about the level of both his substance abuse and his mental health as well, and I think both of those things combined really does cause me to be greatly concerned about his level of dangerousness . . . ." The court went on to "strongly encourage the Department of Corrections [and Rehabilitation] to immediately assess Mr. Reynolds for mental health treatment within the prison system and that possibly he be deemed an MDO if he qualifies." The court explained that "I think that would be the most beneficial for Mr. Reynolds in the long term, and I hope that he is provided the services that are available to him through that process because I am extremely concerned that without ongoing and long-term mental health treatment, if he doesn't remain in remission and off of substances, that he will pose a danger to both himself and to the community." The court imposed a concurrent one-year term on count 6 and awarded Reynolds credit for 543 days served.

Reynolds filed a timely notice of appeal, challenging only his sentence.

## II.    DISCUSSION

"A sentencing court enjoys broad discretion in determining whether to grant or deny probation. A defendant who is denied probation bears a heavy burden to show the trial court has abused its discretion. [Citations.]" (*People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1157, citing inter alia *People v. Carbajal* (1995) 10 Cal.4th 1114,

4

1120.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve the legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377.) " '[A] denial of probation after consideration of the application of its merits is almost invariably upheld. [Citations.]' (3 Witkin & Epstein, Cal. Criminal Law [(3d ed. 2000)] Punishment, § 532, pp. 718–719.)" (*People v. Mehserle,* at p. 1157.)

Reynolds argues that the trial court abused its discretion in sentencing him to state prison on the "hope" that he would be treated as an MDO. We find no abuse of the court's considerable discretion.

A.    *Forfeiture*

The Attorney General first contends that Reynolds has forfeited his challenge to his sentence by failure to object to the court's statement "strongly encourag[ing]" assessment of Reynolds by the Department of Corrections and Rehabilitation for mental health treatment, and by failing to object to the aggravating factors relied upon by the trial court in support of the upper term. "[C]omplaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal" (*People v. Scott* (1994) 9 Cal.4th 331, 356), because "[r]outine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention" (*id.* at p. 353).

Were Reynolds specifically challenging the court's choice of the aggravated three-year term, we would agree that such a claim would be forfeited. But Reynolds makes no

5

such argument.[3]  Instead, he contests only the court's decision to deny him probation, and contends that the court relied upon an improper factor in doing so.  It is questionable whether Reynolds has preserved his claim that the court relied upon an improper factor in denial of probation, since he made no specific objection to *any* of the reasons set forth by the court as the bases for its decision.  However, even if we were to assume that his generalized argument for probation, and that MDO treatment in prison was "by no means assured," was sufficient to preserve the more narrow issue for appeal, we would reject it on the merits.

B.    *Denial of Probation*

Reynolds insists that there "should be no question the primary reason the court sentenced him to prison was to make him eligible for MDO status."  We first disagree with the foundational premise upon which Reynolds's arguments rest, and we disagree with his conclusion.

"Where [a] defendant is eligible for probation, the court must state its reasons for selecting a prison commitment as its sentencing choice.  This obligation to state reasons is satisfied by an explanation of why probation has been rejected in favor of imprisonment.  [Citations.]"  (*People v. Leung* (1992) 5 Cal.App.4th 482, 506.)  "For instance, the ' "nature and seriousness of the offense" ' is sufficient.  [Citation.]"  (*People v. Mehserle, supra,* 206 Cal.App.4th at p. 1158.)

"Criteria affecting the decision to grant or deny probation include facts relating to the crime and facts relating to the defendant. . . ."  (Cal. Rules of Court, rule 4.414; *People v. Weaver* (2007) 149 Cal.App.4th 1301, 1312.)  "In deciding whether to grant or deny probation, a trial court may also consider additional criteria provided those criteria

---

[3] Such an argument would, in any event fail, on the merits.  The court articulated reasons for the aggravated term that had nothing to do with possible MDO treatment. "The court's discretion to identify aggravating circumstances is otherwise limited only by the requirement that they be 'reasonably related to the decision being made.'  (Cal. Rules of Court, rule 4.408(a).)"  (*People v. Sandoval* (2007) 41 Cal.4th 825, 848, fn. omitted.)

6

are reasonably related to that decision.  ([Cal. Rules of Court], [r]ule 4.408(a).)[4] . . .
Unless the record affirmatively shows otherwise, a trial court is deemed to have
considered all relevant criteria in deciding whether to grant or deny probation or in
making any other discretionary sentencing choice.  ([Cal. Rules of Court], [r]ule 4.409.)"
(*People v. Weaver,* at p. 1313.)

The record here reflects that the court carefully considered the facts relating to
both the offenses committed by Reynolds and his demonstrated substance abuse and
mental health issues.  Despite Reynolds's insistence otherwise, nothing in the record
reflects that the court's "primary reason" in rejecting probation was the possibility of
MDO treatment in state prison.  Rather, the court urged MDO evaluation based on
Reynolds's well-documented history of delusional behavior, compounded by substance
abuse, and the resulting danger that Reynolds presented to the community and to himself
if untreated.  Reynolds fails to demonstrate that the court's decision to deny probation
was limited to any single factor, and does not meet his heavy burden to show that
decision was irrational or arbitrary.

Moreover, Reynolds fails to carry his appellate burden to show the error allegedly
made by the court was prejudicial.  "When a trial court has given both proper and
improper reasons for a sentence choice, a reviewing court will set aside the sentence only
if it is reasonably probable that the trial court would have chosen a lesser sentence had it
known that some of its reasons were improper.  [Citation.]" (*People v. Price* (1991)
1 Cal.4th 324, 492.)  Reynolds contends, without any cited support in the record, that
"[h]ad the trial court realized, in the circumstances, using the hope that [Reynolds] would
be found to be an MDO as support for a state prison sentence was improper, it is
reasonably probable it would have granted [Reynolds] probation as recommended by the
probation officer."  Again, we read the court's clearly expressed concerns with

---

[4] Since we find that the court's denial of probation is otherwise adequately
supported, we need not decide if consideration of the mental health treatment possibilities
available under the MDO scheme are, or are not, factors reasonably related to the court's
sentencing discretion under California Rules of Court, rule 4.408(a).

Reynolds's level of dangerousness, and his failure to comply with prior conditions of probation, very differently than what Reynolds urges.  Reynolds does not show any reasonable probability that the court would have granted him probation even absent consideration of the possibility of MDO treatment, and any alleged error in denying probation was unquestionably harmless.

### III.    DISPOSITION

The judgment is affirmed.


_____
Bruiniers, J.


We concur:


_____
Jones, P. J.


_____
Needham, J.