Filed 4/29/14  P. v. Williams CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>DEQUISE J. WILLIAMS,<br><br>     Defendant and Appellant. | C070382<br><br>(Super. Ct. No. 11F05725) |

A jury convicted defendant Dequise J. Williams of arson of an inhabited structure. The trial court sentenced him to five years in prison and awarded him 156 days of presentence credit.

Defendant now contends (1) the trial court erred in refusing defendant's requested pinpoint instruction, which specified that reckless conduct leading to the burning of a building is not arson, but only constitutes the lesser included offense of unlawfully causing a fire; (2) the trial court misunderstood the scope of its discretion to grant

1

probation; (3) alternatively, defendant's trial counsel was ineffective in failing to explain the trial court's proper scope of discretion regarding probation; and (4) defendant is entitled to additional presentence credit.

We conclude (1) the trial court adequately instructed on arson and unlawfully causing a fire, and it did not err in declining the requested instruction because the instruction duplicated other proper instructions; (2) the trial court understood and properly exercised its discretion in denying probation; (3) defendant's ineffective assistance claim lacks merit because trial counsel was not deficient and defendant has failed to show prejudice; and (4) we will modify the judgment to grant defendant 141 days of custody credit and 21 days of conduct credit, for a total of 162 days of presentence credit.

We will affirm the judgment as modified.

BACKGROUND

Roy H., his wife Ashleigh S., and their daughter lived in a one-bedroom apartment located on Del Paso Boulevard in Sacramento.[1] The apartment was part of a single story complex with four units laid out in a row. Defendant is Roy's stepbrother. Defendant stayed at Roy and Ashleigh's apartment "[o]n and off." Defendant's girlfriend Mariah Silver and their daughter also stayed at the apartment from time to time.

On the evening of August 16, 2011, Roy, Ashleigh, Mariah, Roy's brother Roess, Roess's wife, and Roess's young daughter were outside the Hightower apartment. Defendant came over with his friend David. Defendant's girlfriend testified that he was "drunk."

Roy and Ashleigh told defendant he had to move out because their Child Protective Service (CPS) case worker said Roy and defendant could not live together

_____

[1] We refer to certain individuals by their first names for clarity.

with pending CPS cases against them. Ashleigh told a defense investigator that she also told defendant he had to leave because he had not paid rent. Defendant became angry. He went inside the apartment and began to put his belongings in his daughter's stroller. Mariah followed defendant inside. The couple began to argue.

Defendant and Mariah went into the bedroom, where they kept their belongings, and continued arguing. Everyone else was outside the apartment. Ashleigh heard someone throwing things around in the bedroom.

Mariah said she hid in the bedroom closet after defendant threatened that she would not see their daughter; Mariah did not want her crying to make defendant more upset. She remained in the closet for about 10 minutes and heard defendant moving about the bedroom. When she exited the closet, Mariah saw that half of the bedroom was on fire. The fire was at the foot of the bed. Mariah ran out of the bedroom.

Defendant left the bedroom and walked out the front door of the apartment. He walked quickly past Ashleigh and said, "I hope you like the way I remodeled your room" or "I hope you like the way I set up your new room now." Ashleigh explained that although she ascribed different words to defendant during her interview with the fire investigator and at the trial, defendant essentially said he did something to Ashleigh's bedroom.

Ashleigh looked inside and saw flames and smoke in the bedroom. A few seconds later, Mariah came out of the bedroom. Mariah's face was red and she was choking. Ashleigh called 911 and yelled for her neighbors to evacuate.

Roess heard defendant mumble, "Fuck y'all. I burn shit" or "Fuck y'all. I burn shit down" as he walked past Roy and Roess. Roess saw smoke coming from the front door.

Roy recalled defendant saying, "I hope you like your new room" or "I hope you like what I did to your room." Defendant appeared angry and proud of himself when he

3

made these statements. Roy looked in the apartment and saw smoke and flames coming from the end of his bed.

Roy testified that defendant said, "I set your house on fire" as he walked across the street. Roy asked defendant why he burned the house. According to Roy, defendant answered, "I did that" and "I burnt it up." Roy said defendant showed no remorse. Roy and defendant wrestled and punched each other; then defendant walked away.

City of Sacramento Fire Department Investigator David Fowler testified as an expert on fire investigation. He determined the fire started in the area of the northeast corner of the bedroom, at the foot of the bed, and the fire spread to the rest of the bedroom, the bathroom, and the kitchen. Fowler saw a lot of clothing in the area where the fire started. He opined that the fire started outside the closet.

The fire was not caused by the television, electrical outlets or air conditioning unit. Fowler opined that the fire was intentionally set, based on the fire pattern, the physical evidence at the property, the possible sources of combustion near the origin of the fire, and witness interviews. He determined that an open flame was used to deliberately ignite the fire. He ruled out any accidental causes of the fire. He did not find a cigarette or candle in the area where the fire started.

Fowler did not detect any type of accelerant used to set the fire. But he said an accelerant was not needed to start a fire. He testified that clothing and bedding were commonly used as accelerants and an open flame from a lighter could ignite a fire. He also ruled out multiple points or areas of origin, and said multiple points or areas of origin did not necessarily indicate that a fire was more likely intentionally set.

Defendant smoked cigarettes. Mariah reported that defendant carried a lighter.

The jury convicted defendant of arson of an inhabited structure. (Pen. Code, § 451, subd. (b).)[2] The trial court declined to grant probation, sentenced defendant to the middle term of five years in prison, and awarded 156 days of presentence credit (136 actual days and 20 conduct days).

## DISCUSSION

### I

Defendant contends the trial court erred in refusing defendant's requested pinpoint instruction. The requested instruction stated: "Reckless conduct causing only a chain that leads to the burning of a building constitutes only the lesser-included offense of unlawfully causing a fire."

The prosecutor objected to the requested instruction, arguing that CALCRIM No. 1531, which the trial court intended to use, adequately explained the crime of unlawfully causing a fire.

The trial court ultimately declined to give defendant's requested instruction, stating there was no evidence to support it, and the instruction would mislead and confuse the jury. The trial court said the evidence indicated defendant wanted to burn everything in the apartment.

Defendant argues the requested instruction would have clarified the difference between the requisite intent for arson and the requisite intent for unlawfully causing a fire. He claims the trial court's refusal to give the instruction kept a relevant factual consideration from the jury, thereby violating defendant's rights to due process and trial by jury.

A person commits arson of an inhabited structure when he willfully and maliciously sets fire to or burns or causes to be burned an inhabited structure. (§ 451,

---

[2] Undesignated statutory references are to the Penal Code.

5

subd. (b).) "Willfully" means the person knows what he is doing and intends to do the act that causes the harm. (§ 7, subd. 1; *People v. Atkins* (2001) 25 Cal.4th 76, 85-86.) " 'Maliciously' imports a wish to vex, defraud, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." (§ 450, subd. (e).)

A person commits the crime of unlawfully causing a fire when he recklessly sets fire to or burns or causes to be burned, among other things, an inhabited structure. (§ 452, subd. (b).) " 'Recklessly' means a person is aware of and consciously disregards a substantial and unjustifiable risk that his or her act will set fire to, burn, or cause to burn a structure, forest land, or property. The risk shall be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto." (§ 450, subd. (f).)

"Under appropriate circumstances, 'a trial court may be required to give a requested jury instruction that pinpoints a defense theory of the case . . . . But a trial court need not give a pinpoint instruction if it is argumentative [citation], merely duplicates other instructions [citation], or is not supported by substantial evidence [citation].' " (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 99.)

Here, the trial court properly instructed the jury with CALCRIM No. 1502 [arson: inhabited structure] and CALCRIM No. 1531 [unlawfully causing a fire: inhabited structure]. Pursuant to CALCRIM No. 1502, the trial court instructed the jury that to find defendant guilty of arson, the People must prove that defendant acted willfully and maliciously, terms that the trial court properly defined. And pursuant to CALCRIM No. 1531, the trial court instructed that in order to convict defendant of the lesser included offense of unlawfully causing a fire, the People must prove that defendant acted recklessly, a term that the trial court also properly defined. Those instructions adequately

6

explained the difference between the requisite intent for arson and the requisite intent for unlawfully causing a fire. They did not keep a relevant factual consideration from the jury. The trial court did not err in declining to give an additional instruction on a point already adequately covered by other instructions. (*People v. Hughes* (2002) 27 Cal.4th 287, 362-363.)

The requested instruction also did not pinpoint defendant's theory of the case as presented to the jury. Defendant did not argue to the jury that he recklessly or unintentionally set the fire. He argued instead that he was innocent, suggesting that Mariah was also unhappy about being asked to move out.

In any event, defendant has not shown prejudice. No prejudice resulted if it is not reasonably probable that the trial court's failure to so instruct affected the verdict. (*People v. Hughes, supra,* 27 Cal.4th at p. 363; *People v. Earp* (1999) 20 Cal.4th 826, 887 [applying *People v. Watson* (1956) 46 Cal.2d 818 standard to error in refusing defense pinpoint instruction].) Here, the prosecutor and defense counsel highlighted to the jury that arson requires a finding of willfulness and malice, whereas unlawfully causing a fire requires a finding of reckless conduct. And the evidence supporting defendant's conviction for arson was compelling. When Mariah hid in the closet, defendant was the only person with access to the area around the bed, which Fowler determined was where the fire started. Everyone else was outside the apartment. Fowler opined that the fire did not start in the closet where Mariah was hiding. Fowler opined that the fire was intentionally set and that an open flame was used to ignite the fire. Fowler said clothing and bedding were commonly used as accelerants. And he saw a lot of clothing in the area where the fire started. There was also evidence that defendant smoked cigarettes and carried a lighter. Fowler said an open flame from a lighter could ignite a fire. Fowler did not find a cigarette or candle in the area where the fire started to suggest an accidental fire.

Defendant had a motive for starting the fire. He was mad that Roy and Ashleigh asked him to move out. His anger was evident in the various self-incriminating statements he made to Roy, Ashleigh, and Roess. For example, when Roy asked defendant why he burned the house, defendant said "I did that" and "I burnt it up." According to Roy, defendant looked angry and proud of himself when he made these statements. Defendant's statements suggest that he acted willfully and maliciously in setting a fire in Roy and Ashleigh's bedroom. There was no evidence that the fire was set recklessly, such as carelessly discarding a lit cigarette.

Defendant's contention lacks merit.

## II

Defendant next argues that the trial misunderstood the scope of its discretion to grant probation.

" 'The grant or denial of probation is within the trial court's discretion and the defendant bears a heavy burden when attempting to show an abuse of that discretion. [Citation.]' (*Ibid*.) 'In reviewing [a trial court's determination whether to grant or deny probation,] it is not our function to substitute our judgment for that of the trial court. Our function is to determine whether the trial court's order granting [or denying] probation is arbitrary or capricious or exceeds the bounds of reason considering all the facts and circumstances.' [Citation.] [¶] 'The decision to grant or deny probation requires consideration of all the facts and circumstances of the case. [Citation.]' " (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1311-1312.)

California Rules of Court, rule 4.414, sets forth the criteria affecting the decision to grant or deny probation. "In deciding whether to grant or deny probation, a trial court may also consider additional criteria not listed in the rules provided those criteria are reasonably related to that decision. [Citation.] A trial court is generally required to state its reasons for denying probation and imposing a prison sentence, including any additional reasons considered pursuant to rule 4.408. [Citation.] Unless the record

8

affirmatively shows otherwise, a trial court is deemed to have considered all relevant criteria in deciding whether to grant or deny probation or in making any other discretionary sentencing choice. [Citation.]" (*People v. Weaver, supra,* 149 Cal.App.4th at p. 1313.)

The trial court expressly stated that it considered the probation report, the statements in aggravation and in mitigation, and a psychiatric report submitted by defendant.

Defendant suggests the trial court found defendant "ineligible" for probation. He contends the trial court "relied" on the following statement in the probation report: "The defendant is advisably ineligible for probation pursuant to Penal Code Section 454(c), unless the Court finds unusual circumstances warranting a grant of probation."[3]

Defendant misconstrues the trial court's comments. It is true that the trial court said: "In terms of unusual circumstances that would make him ineligible for probation, [the] probation department did not find any." But the trial court did not "find" defendant ineligible for probation, and it did not rely on the challenged comments in the probation report. Instead, the trial court showed that it understood and fully exercised its discretion in considering whether to grant defendant probation.

The trial court considered and weighed the California Rules of Court, rule 4.414 factors and decided to deny probation. It began by considering some of the mitigating factors defendant advances on appeal. The trial court explained that it considered defendant's mental health history, that this was his first adult conviction, and that his

---

[3] Section 454, subdivision (c) provides that probation shall not be granted to any person who violates section 451 (arson) or 452 (unlawfully causing a fire) during or within the area of a state of insurrection or a state of emergency proclaimed by the Governor, except in unusual cases where the interest of justice would best be served. Section 454, subdivision (c) does not apply to this case because defendant was not convicted of arson during or within the area of a state of insurrection or a state of emergency proclaimed by the Governor.

9

juvenile offenses occurred many years prior.  The trial court also considered the dangerousness of defendant's conduct in this case and his lack of success in prior treatment.  (Cal. Rules of Court, rule 4.414(a)(1), (b)(1), (b)(4), (b)(8).)  The trial court concluded:  "[W]hen you weigh those factors in terms of his dangerousness, I don't see giving him a grant of probation after balancing, balancing the criminal conduct in this case, the dangerousness of this case, as against his past criminal history in matters that I have already mentioned, and so based upon that I think it's aggravated, and he shall not be given a grant of probation."  Those statements show that the trial court did not improperly find defendant ineligible for probation pursuant to section 454, subdivision (c), and did not misunderstand the scope of its discretion to grant or deny probation.

### III

Defendant argues, in the alternative, that his trial counsel was ineffective in failing to explain the trial court's proper scope of discretion regarding probation.

To prevail on his ineffective assistance of counsel claim, defendant must prove (1) that trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) that the deficiency resulted in prejudice to defendant.  (*People v. Maury* (2003) 30 Cal.4th 342, 389; *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693].)  If defendant makes an insufficient showing on either one of these components, his ineffective assistance claim fails.  (*People v. Holt* (1997) 15 Cal.4th 619, 703; *Strickland v. Washington*, *supra*, 466 U.S. at p. 687 [80 L.Ed.2d at 693].)

Defendant must affirmatively prove prejudice.  (*People v. Maury, supra*, 30 Cal.4th at p. 389; *Strickland v. Washington*, *supra*, 466 U.S. at p. 693 [80 L.Ed.2d at 697].)  "[T]he record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the

10

outcome.' [Citation.]" (*People v. Maury, supra*, 30 Cal.4th at p. 389.)  It is not enough for defendant to show that errors had some conceivable effect on the outcome of the case. (*People v. Ledesma* (1987) 43 Cal.3d 171, 217; *Strickland v. Washington*, *supra*, 466 U.S. at p. 693 [80 L.Ed.2d at 697].)  He must show a reasonable probability of a more favorable result.  (*People v. Ledesma, supra,* 43 Cal.3d at pp. 217-218; *Strickland v. Washington, supra*, 466 U.S. at p. 694 [80 L.Ed.2d at 698].)

Defendant argues trial counsel was deficient because there was no conceivable reason not to explain the scope of discretion to the trial court, and the deficiency was prejudicial because a reasonable probability exists that, but for counsel's failings, the trial court would have granted probation.

As we explained in part II, *ante*, however, the trial court did not find defendant ineligible for probation pursuant to section 454, subdivision (c), and it did not misunderstand the scope of its discretion to grant or deny probation.  Thus, there was no reason to explain the scope of discretion to the trial court, and trial counsel was not deficient.  Moreover, defendant has not established prejudice, because even if his trial counsel had objected and explained the scope of discretion, the record indicates the trial court would have done what it did:  considered and weighed the California Rules of Court, rule 4.414 factors and decided to deny probation.

Defendant's ineffective assistance claim lacks merit.

IV

Defendant contends he is entitled to additional presentence credit.  The People agree.

Defendant was arrested on September 7, 2011.  He was sentenced on January 25, 2012.  Accordingly, he was entitled to 141 (not 136) days of actual custody credit. (§ 2900.5, subd. (a).)  Pursuant to section 2933.1, defendant would receive no more than 15 percent conduct credit -- 21 (not 20) days -- because he was convicted of a qualifying felony.  We will modify the judgment to award defendant 162 days of presentence credit.

11

DISPOSITION

The judgment is modified to award defendant 141 days of custody credit and 21 days of conduct credit for a total of 162 days of presentence credit.  The judgment is affirmed as modified.  The trial court is directed to prepare an amended abstract of judgment reflecting the judgment as modified, and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.


      MAURO      , J.


We concur:


      BLEASE      , Acting P. J.


      MURRAY      , J.