Filed 5/14/21  P. v. Adams CA1/5
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SHIRA JESSIE ADAMS,<br><br>    Defendant and Appellant. | A160619<br><br>(Mendocino County<br>Super. Ct. No. SCUK CRCR<br>19-33183) |

Shira Jessie Adams stabbed a pregnant girl in the neck with a knife and later pled no contest to assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)).[1]  The trial court denied Adams's request for probation (§ 1203, subd. (e)(2)) and sentenced her to the midterm of three years in state prison.

Adams appeals.  She contends the court erred in denying probation, and that it should have sentenced her to the low term.  We disagree and affirm.

## BACKGROUND

In November 2019, Adams was 18 years old.  She carried a four- to six-inch fixed-blade knife in her purse.  One afternoon, Adams got into an

---

[1] Undesignated statutory references are to the Penal Code.

1

argument with her boyfriend's 17-year-old sister, N.T., over a hair straightener. N.T. was five months pregnant. She lunged at Adams. Scared, Adams retrieved the knife from her purse. She stabbed N.T. in the neck, just missing N.T.'s carotid artery. Police officers arrived and found N.T. bleeding from a one-inch wound near her esophagus. N.T. was airlifted to a hospital.

A.

Adams pled no contest to assault with a deadly weapon, rendering her presumptively ineligible for probation absent unusual circumstances where the interests of justice would be served by granting probation. (§§ 245, subd. (a)(1); 1203, subd. (e)(2).) The probation department's initial report outlined the criteria affecting probation eligibility (Cal. Rules of Court, rule 4.414)[2] and the aggravating and mitigating factors (rules 4.421, 4.423). Unsure whether an "unusual circumstance" warranted probation, the department suggested the court order a diagnostic evaluation and recommendation from the California Department of Corrections and Rehabilitation (CDCR, § 1203.03). The court ordered the evaluation.

The evaluation described Adams's chaotic and abusive childhood. It also chronicled Adams's significant substance abuse problem: she began using marijuana at age 12 and by age 17, she was frequently using methamphetamine, cocaine, and LSD. According to the evaluation, Adams suffered from amphetamine use disorder. Adams reported being diagnosed with bipolar disorder and suffering from post-traumatic stress disorder. She claimed she was under the influence of methamphetamine and LSD during the incident and, as a result, was " 'not sure about anything that happened.' " Adams wanted to attend a residential drug treatment program.

---

[2] "Rule" references are to the California Rules of Court.

2

The evaluation suggested Adams's substance abuse problem might prevent her from performing well on probation. According to the evaluation, Adams used drugs in jail after the incident and when released on bail. The evaluation also noted Adams displayed a lack of remorse and minimized the severity of N.T.'s injury. Finally, the evaluation stated a prison commitment would provide Adams with a "highly structured environment" and an opportunity for substance abuse treatment and therapy.

After considering the evaluation, the CDCR recommended denying probation and imposing a prison sentence. It deemed Adams an "unreasonable burden and or threat to the safety of the community." The probation department agreed. It opined Adams was a threat to public safety based on the violent nature of the offense and Adams's lack of remorse. The department concluded a prison term would protect the public and provide Adams with treatment and counseling; it recommended the midterm.

B.

Notwithstanding the evaluation and the CDCR's recommendation, defense counsel urged the court to find unusual circumstances and grant probation. Counsel pointed to several mitigating factors, including: Adams's youth; her drug addiction and mental illness; and the trauma from her childhood abuse. Adams asked the court to give her "a second chance" to allow her to "make up for" what she had done.

The prosecutor recommended denying probation. According to the prosecutor, Adams was a public safety threat because she could not control her anger; she was addicted to methamphetamine; and she was not remorseful. The prosecutor argued there were no "unusual circumstances rising to such a level that probation should be granted" and urged the court to impose an aggravated four-year prison term.

## C.

The court denied probation. It explained that it had read defense counsel's sentencing memorandum, the probation reports, the CDCR evaluation, and the letters written by Adams and her mother. The court noted it had considered Adams's age, and her mental health condition and drug addiction, and had weighed those factors against the seriousness and dangerousness of the offense. As the court observed, Adams stabbed a pregnant girl in the neck with a knife and could have killed the girl and her unborn child. It rejected Adams's claim that she used the knife in self-defense, noting Adams had "assaulted someone with a knife" before, and that "she carried that knife in her purse for the purpose of using" it.

The court determined Adams needed structure, treatment, and therapy. It decided "the best place for that to happen . . . given all the circumstances" was state prison. The court was skeptical the probation department could provide the structure Adams needed, in part because Adams had missed appointments with her probation officer and had to be "remand[ed] to get [the] probation interview done." The court also pointed out that Adams had not taken advantage of a previous opportunity to attend therapy.

After denying probation, the court announced its intention to impose the middle term. Defense counsel objected. Counsel reiterated the mitigating factors and urged the court to impose the low term. The prosecutor submitted to the midterm. The court balanced the aggravating and mitigating factors and sentenced Adams to the middle term. It explained it had considered Adams's "age and the report that she was coming down from methamphetamine use, and the fact that she didn't have any adult convictions." Against those factors, the court noted Adams had stabbed a girl

4

she knew was pregnant in the neck and that Adams had a history of carrying a knife and using it for assaultive purposes. The court concluded the midterm was the "appropriate sentence."

## DISCUSSION

### A.     No abuse of discretion in denying probation

Adams acknowledges she was presumptively ineligible for probation under section 1203, subdivision (e)(2), which states: "Except in unusual cases in which the interests of justice would best be served if the person is granted probation, probation shall not be granted to . . . [¶] . . . [¶] [a]ny person who used . . . a deadly weapon upon a human being" in perpetrating the crime. She argues this is an "unusual case" deserving of probation. The trial court was not persuaded, and neither are we.

A trial court has broad discretion in determining whether to grant or deny probation. (*People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 825.) In reviewing that determination, we do not "substitute our judgment for that of the trial court." Instead, we "determine whether the trial court's order . . . is arbitrary or capricious or exceeds the bounds of reason considering all the facts and circumstances." (*Ibid*.) We will not reverse the court's decision merely because reasonable people might disagree. (*People v. Stuart* (2007) 156 Cal.App.4th 165, 179.)

Rule 4.413 enumerates factors the trial court should consider in determining whether to grant probation when a defendant is presumptively ineligible, including factors "relating to basis for [the] limitation on probation" and factors "limiting [the] defendant's culpability." (Rule 4.413(c)(1), (c)(2).) Here, the relevant factors are: (1) the "circumstance giving rise to the limitation on probation is . . . substantially less serious than the circumstances typically present in other cases involving the same

5

probation limitation, and the defendant has no recent record of committing similar crimes or crimes of violence;" (2) the "defendant participated in the crime under circumstances of great provocation, . . . not amounting to a defense, and the defendant has no recent record of committing crimes of violence;" (3) the "crime was committed because of a mental condition not amounting to a defense, and there is a high likelihood that the defendant would respond favorably to mental health care and treatment that would be required as a condition of probation;" and (4) the "defendant is youthful . . . and has no significant record of prior criminal offenses." (Rule 4.413(c)(1)(A), (c)(2)(A)–(C).)[3]

But as Adams acknowledges, " 'mere suitability for probation does not overcome the presumptive bar . . . . [I]f the statutory limitations on probation are to have any substantial scope and effect, "unusual cases" and "interests of justice" must be narrowly construed,' and rule 4.413 'limited to those matters in which the crime is either atypical or the offender's moral blameworthiness is reduced.' " (*People v. Stuart, supra,* 156 Cal.App.4th at p. 178.) In denying probation and sentencing Adams to state prison, the trial court made an implied finding that her case "did not fall in the class of 'unusual cases where the interest of justice demands a departure from the declared policy.' " (*People v. Jones* (1962) 203 Cal.App.2d 228, 230 [record supported implied finding that defendant did not overcome statutory presumption against probation].)

---

[3] If the court determines the statutory limitation on probation is overcome, it applies the criteria in rule 4.414—which lists facts relating to the crime and facts relating to the defendant—to decide whether to grant probation. (Rules 4.413(b), 4.414(a), (b).) Before denying probation, the court considered the criteria in rule 4.414, which were discussed at length in the probation reports and in defense counsel's sentencing memorandum.

Ample evidence supports the court's determination. Adams's act of stabbing a girl she knew was pregnant in the neck was not substantially less serious than others for which the probation limitation applied. (Rule 4.413(c)(1)(A).) To the contrary—and as the court observed—the offense was life-threatening and "could have been charged more seriously." Adams had also previously assaulted someone with a knife. (*Ibid.*) The court was not required to accept Adams's version of the events, nor her contention that she had reduced moral culpability because of various circumstances, including her drug addiction. (*People v. Stuart, supra,* 156 Cal.App.4th at p. 179.) The court "carefully and sufficiently considered the specific circumstances of this case" and acted within its discretion by declining to grant probation. (*Id.* at pp. 187, 177.)

### B. No abuse of discretion in imposing the midterm

Adams also challenges the court's decision to sentence her to the midterm rather than the low term. We review that decision for abuse of discretion, reversing only if it " 'is so irrational or arbitrary that no reasonable person could agree with it.' " (*People v. Sperling* (2017) 12 Cal.App.5th 1094, 1102.) Where—as here—the trial court balanced the aggravating and mitigating factors, the choice of the presumptive midterm sentence "need not be additionally justified." (*People v. Leung* (1992) 5 Cal.App.4th 482, 508.)

There was no abuse of discretion. The court weighed the aggravating and mitigating factors and concluded neither outweighed the other. (*People v. Roe* (1983) 148 Cal.App.3d 112, 119–120 [no abuse of discretion by imposing midterm after considering relevant factors and reaching a "reasonable assessment of their relative weight"]; *People v. Sperling, supra,* 12 Cal.App.5th at pp. 1102–1103 [upholding imposition of middle term].)

7

Adams's disagreement with the court's decision to impose the middle term does not demonstrate an abuse of discretion. (See *People v. Carmony* (2004) 33 Cal.4th 367, 377.)

We reject Adams's claim that the court failed to "sufficiently weigh" several mitigating factors, including her mental health condition and her dysfunctional and traumatic childhood. Before sentencing Adams, the court read and considered defense counsel's sentencing memorandum and the probation department's reports, all of which discussed the mitigating factors. We presume the court considered all relevant mitigating circumstances even though "it did not expressly restate, recite, or otherwise refer to each one" at sentencing. (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1318, disapproved on another ground as stated in *People v. Cook* (2015) 60 Cal.4th 922, 934–935; *People v. Sperling, supra,* 12 Cal.App.5th at p. 1102 [rejecting similar claim that trial court failed to consider mitigating factors].) Additionally, the court was free to " 'minimize or even entirely disregard mitigating factors without stating its reasons.' " (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1258.)

## DISPOSITION

The judgment is affirmed.

_____
Rodriguez, J.*

WE CONCUR:


_____
Simons, Acting P. J.


_____
Burns, J.


A160619

---

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.